Commonwealth *v.* Brown et al., Appellants.

Argued October 1, 1934.

Before Keller, Cunningham, Baldrige, Stadtfeld, Parker and James, JJ.

*Charles J. Margiotti,* with him *John E. Evans, Sr., James H. Duff* and *James H. Thompson,* for appellants.

*Albert H. Thomas,* with him *G. B. Straub, D. J. Driscoll* and *John H. Cartwright,* for appellees.

OPINION BY CUNNINGHAM, J., December 18, 1934:

Appellants, E. D. Brown and T. H. Ledden, two of the commissioners of Elk County, were accused, along with their fellow commissioner, Joseph Wiesner, in an indictment containing thirteen counts, of various wilful, dishonest and fraudulent acts amounting to the common law offense of misbehavior in office. Counts one to eleven, inclusive, charged various intentional, unlawful and dishonest acts in connection with the sale by defendants of six unredeemed tracts of land and the execution and delivery of deeds for five of them; the twelfth, an illegal advance payment to Ledden on account of salary, and the thirteenth, the payment of certain land damages in excess of the amount awarded. In his charge, the learned trial judge instructed the jury that no evidence had been offered in support of the thirteenth count and that the evidence was insufficient to sustain a conviction of any of the defendants upon the twelfth. The jury was also directed to acquit Wiesner because, in the opinion of the trial judge, "there [was] not sufficient evidence to warrant his conviction upon any counts charged in [the] indictment."

The case was submitted to the jury, as against Brown and Ledden, upon counts one to eleven, inclusive; they were convicted upon the first four counts and acquitted upon the others. Sentence was pronounced only under the first and third counts. Each defendant was sentenced to pay a fine of $500 and costs: undergo imprisonment in the county jail for a

term of six months, and be removed from office. Their separate appeals are now before us and may be disposed of in a single opinion.

We are now concerned only with the first four counts of the indictment. The lands therein mentioned were two large tracts designated by warrant numbers and theretofore purchased by the commissioners, for the use of the county, at treasurer's sales for non-payment of taxes, aggregating approximately $2,800; they had remained unredeemed for more than two years. As a general proposition, it is the duty of county commissioners, under a mandatory statute, to offer such lands at a public sale thereof, after advertisement once a week for six successive weeks in two newspapers published in the county, and to execute, acknowledge and deliver, deeds therefor to the purchasers.

The material portions of the first count charged that appellants, as commissioners of Elk County, "unlawfully did then and there wilfully misbehave themselves in said office as county commissioners in that they did a certain dishonest and unlawful act, to wit, they did then and there unlawfully and wilfully expose to public sale and sell on the 24th day of January, 1933, unto one J. L. Trambley of Johnsonburg, Pennsylvania, for the price or sum of $12.50 a certain piece or tract of land situate in Jones Township, Elk County, Pennsylvania, known and designated as Warrant No. 2329 containing 990 acres of land without first having given due and legal notice by advertisement in two newspapers published in the County of Elk for six successive weeks that said piece of land, to wit: tract No. 2329 would be sold on said date, to wit: January 24, 1933; but on the contrary, the said E. D. Brown [and] T. H. Ledden ...... county commissioners of Elk County aforesaid, duly and regularly advertised that said tract No. 2329 would be sold on the 13th day of June, 1932, and upon said date the said sale of said

Warrant No. 2329 was by the said defendants, E. D. Brown [and] T. H. Ledden ...... duly, regularly and publicly adjourned to the 21st day of October, 1932, and on said last mentioned date the said sale of said Warrant No. 2329 was by the said defendants, E. D. Brown [and] T. H. Ledden ...... duly, regularly and publicly adjourned to the first Monday of March, 1933, and thereafter the said defendants E. D. Brown [and] T. H. Ledden ...... unlawfully and wilfully and without further notice of any kind, did offer the said Warrant No. 2329 at public outcry on the 24th day of January, 1933, and sold the same unto J. L. Trambley for the sum of $12.50, to the great prejudice and damage of the County of Elk and contrary to the form of the Act of General Assembly in such case made and provided, and against the peace and dignity of the Commonwealth of Pennsylvania.''

The third count was based upon the sale, upon the same date, to the same purchaser, for the same price and under like circumstances with respect to adjournments and lack of notice, of another tract containing the same acreage but designated as Warrant No. 2332.

It was stipulated and agreed by counsel for appellants and counsel for the Commonwealth, inter alia, that the proposed sale of these tracts advertised for June 13, 1932, was regularly and duly advertised for that date. The adjournment to October 21, 1932, is not alleged to have been unlawful. The gist of the offense charged is that appellants on October 21, 1932, publicly adjourned the sale of these tracts to the first Monday of March, 1933, and then, without notice or advertisement of any kind, wilfully, illegally and dishonestly put them up and sold them on January 24, 1933, to J. L. Trambley for a trifle, thereby stifling any possibility of competitive bidding and defrauding the county out of the opportunity to which it was entitled

of getting the highest price obtainable at a public sale, held after legal notice to all interested persons.

Counts two and four charged that appellants, having unlawfully, fraudulently and wilfully thus sold the tracts described in counts one and three, misbehaved themselves in their office by unlawfully, wilfully and dishonestly making, executing, acknowledging and delivering to Trambley deeds for them. As no sentence was imposed under either of these counts, we may confine our attention to the nature of the offense charged in count one and the like offense in count three, and to the evidence by which the Commonwealth sought to sustain those charges.

It is clear that the offense with which appellants were charged and for which they were sentenced was the common law offense of misbehavior in office and not the statutory offense of neglecting or refusing to perform a duty imposed upon them by law—the latter being the misdemeanor described in, and punishable merely by a fine under, the Act of May 2, 1929, P. L. 1278, 16 PS § 62.

Here the Commonwealth had the burden of proving more than a mere negligent failure to perform the imperative statutory duty of giving public and legal notice that the tracts would be offered at public sale on January 24, 1933. A sale without the notice required by law would be illegal but not inherently criminal. If, however, the alleged acts of the appellants in omitting to give the requisite notice for January 24, 1933, and pretending to adjourn the sale to a later date, were shown to have been intentional acts, designed to conceal from known or possible prospective purchasers the purpose of appellants to have the lands put up on January 24, 1933, and knocked down to Trambley for a nominal bid, the essential elements of the offense charged would be present: Com. v. Rosser et al., 102

Pa. Superior Ct. 78, 156 A. 751; Com. v. Kline, 107 Pa. Superior Ct. 594, 164 A. 124.

There was evidence, and particularly that of Frank O'Neill, commissioner's clerk for more than five years, from which a jury could find these material facts:

The tracts described in counts one and three were not the only ones sold on January 24, 1933; certain other lands (some of which are mentioned in other counts) were also sold at that time and it was agreed that the sale of these other tracts was duly advertised for that date.

The sale of October 21, 1932, was conducted in the commissioners' office by O'Neill and in the presence of Ledden; the lands mentioned in counts one and three were not offered at that sale. The announcement was publicly made that the sale of these two tracts was adjourned to the first Monday in March, 1933, and no notice of any kind was ever given that they would be offered for sale at any earlier date. In writing up the minutes of the proceedings of the commissioners on October 21, 1932, O'Neill left a blank space. Early in December, 1932, O'Neill, at the instance and under the direction of Brown, inserted in this blank space a false minute, drafted by Brown and purporting to show that the sale of the two warrants in question "was adjourned until the next regular commissioners' sale to be held January 24, 1933."

Prior to the original advertisement of these lands, Brown, after telling O'Neill they were valuable and the gas company was after them, said to him, "if we could work these sales through we could make some money out of it and we better get it before somebody else got it." Brown added that "he would have J. L. Trambley to bid it in."

The sale of January 24, 1933, was conducted by O'Neill in the presence of Brown; no bidders for these

two tracts, except Trambley were present and they were struck down to him. Other bidders had been present on October 21, 1932; when they objected to the postponement, Ledden gave as an alleged reason—"the Howard people wanting to redeem the land."

When O'Neill reported to Brown, on the morning after the sale, that a man by the name of Thurston had complained to him about the sale, Brown replied, "Sit tight, we'll lick them anyhow." Prior to the sale, Brown had knowledge that Frank F. Thurston, who had been in attendance on October 21, 1932, as an agent for several gas companies, was prepared to bid up to six dollars per acre for the tracts. Elmer Roeder attended on June 13, 1932, and also on October 21, 1932, prepared to bid up to $7,500 for the tracts, and protested against the refusal to expose them to sale on the latter date.

On October 21, 1932, Ledden said to Carl A. Fay, then in attendance at the sale, "Those lands will be postponed," and continued, "Why should we let outsiders come in and get all the good stuff, why not let somebody, if there is money to be made, in Elk County make it."

W. J. Knupp, a prospective bidder, was told by O'Neill on October 21, 1932, that there would be no sale by the commissioners until March, 1933.

About one year prior to January 24, 1933, Brown told E. N. Wallis that the gas company owned the lands surrounding the two tracts in question and that it was interested in getting these lands but that he (Brown) would prevent the company from acquiring them by adjourning the sale to a time when its representatives would not be present.

In the summer of 1933 Ledden remarked to W. J. McNair, a broker in gas lands and leases, that Trambley had bought some gas lands and McNair might be able to lease them.

For present purposes, it is unnecessary to review the testimony for the Commonwealth in detail. The foregoing is sufficient to indicate its general character and to demonstrate that, if believed, it was sufficient to justify the conclusion that appellants had wilfully, and from a corrupt motive, omitted to perform an imperative statutory duty, which, having accepted their respective offices, they must be presumed to have known was imposed upon them. The commission of such acts constitutes the common law offense of misbehavior in office.

It was not suggested in behalf of appellants that any notice of any kind was ever given the public, known prospective bidders, such as Thurston, or even Roeder, the bidder who protested against the adjournment from October 21, 1932, that the tracts mentioned in counts one and three would be offered for sale on January 24, 1933.

Ledden's testimony was that in adjourning the sale of these tracts on October 21, 1932, he announced their sale "would be adjourned to the next regular commissioners' sale, there was no date mentioned." An excerpt from his testimony reads: "Q. After they were adjourned to the next regular commissioners' sale was there any conversation with any person who was there with you? A. Well, when I made the announcement Mr. Roeder got very angry, he went on with a lot of talk, and I said the sale is adjourned, then Mr. Thurston stepped up and he said to me 'When are you going to have another commissioners' sale?'—'Well,' I said, 'in the coming year, early in the year, not later than the first Monday of March.' ...... Q. I want to get this straight, you have no regular fixed time at which time you make sales or land is sold at commissioners' sales? A. No, sir, no set time for commissioners' sales, whenever we have meetings we set the time, as a

commissioner I sit and do business as a member of the board."

When the commissioners published a notice in two newspapers, beginning December 22, 1932, that they would expose for sale and sell to the highest bidder at the court house in Ridgway on Tuesday, January 24, 1933, certain unredeemed lands, they carefully and fully described therein four parcels of seated lands in Johnsonburg Borough and Highland and Spring Creek Townships and two tracts of unseated lands in Highland Township, designated by warrant numbers and acreage, but made no mention whatever of any intention upon their part to also expose for sale at that time the tracts which had been adjourned from the October 21, 1932, sale.

Although both Ledden and Brown gave as one of their reasons for holding the sale in January, instead of March, their desire to satisfy as promptly as possible the demand of Roeder that the tracts be put up for sale, neither of them made the slightest effort to see that he would be informed of the fact that the lands upon which they knew he wanted to bid would be offered on January 24, although not mentioned in the advertisement for that date.

Brown admitted he had been told Thurston was prepared to bid up to $6 per acre, but no notice was given this prospective bidder.

Notwithstanding the positive denial by appellants of any intentional wrongdoing upon their part, there was evidence which would fully justify and sustain the inference that the failure of appellants to give notice of any kind that the tracts described in the first and third counts would be exposed for sale on January 24, 1933, was neither the result of an error of judgment with respect to their statutory duty nor attributable to a negligent failure to perform that duty, but was a wilful omission corruptly designed and intended to afford an

opportunity for a pretended public sale of the tracts in the absence of known prospective bidders.

The assignments, within the scope of the statement of questions involved upon these appeals, relate to alleged trial errors: (a) In the general charge, (b) In the answers to points submitted on behalf of appellants, and (c) In various rulings upon the admission or rejection of evidence.

In the first assignment it is asserted that the charge "was inadequate and erroneous in that it failed to warn the jury to scrutinize carefully the testimony of Frank O'Neill, a Commonwealth witness, and an admitted accomplice under his own testimony." Assignments two to seven are based upon the answers of the trial judge to appellants' points thirteen to seventeen relating to the same matter. In drafting these points and in making the above criticism of the general charge, counsel for appellants have assumed that O'Neill had, in the language of their thirteenth point, "admitted himself to be an accomplice in the unlawful acts with which these defendants are charged; in other words, he takes the stand as a self-confessed criminal." The position of the trial judge was that, under the evidence in this case, it was for the jury to say whether or not O'Neill was an accomplice. In answering the points now under consideration, he instructed the jury that if they "should find that the defendants, or any of them, committed a crime, and that [O'Neill] admitted, or that it has been otherwise proved, that he aided, abetted or assisted him, or them, in the commission of such crime, then he was an accomplice."

In the fourteenth, fifteenth and seventeenth points, counsel for appellants requested detailed instructions with respect to the manner in which the testimony of an accomplice should be considered by the jury, the danger of convicting upon the uncorroborated testimony of an accomplice, etc.; these points were affirmed

as correct abstract statements of the law if the jury concluded, under all the evidence, that O'Neill was an accomplice. There was ample corroboration of O'Neill's statement that the sale was adjourned to the first Monday of March, 1933, and of other portions of his testimony.

We are not persuaded that any of these assignments should be sustained. The general rule is that when the facts, with respect to the participation of a witness in the crime for which a defendant is on trial, are clear and undisputed, it is for the court to determine whether or not he was an accomplice, but where the facts are in dispute, or different inferences might reasonably be drawn therefrom, the question whether or not a witness was an accomplice is for the jury: Ettinger v. Com.; 98 Pa. 338, 344.

From what we have heretofore said, it is apparent that material facts were in dispute; moreover, O'Neill's testimony was to the effect that when Brown told him there was a chance to make some money on the lands if O'Neill "would go along" and referred to the valuable timber, oil and gas, O'Neill replied he "didn't care" and would do what Brown wanted him to do, explaining that he was interested only in "holding [his] job." Aside from the fact that O'Neill was not a county officer and could not have been convicted of the offense charged, much depended upon the nature of the crime charged and the purpose and intent with which he acted. We think the question whether he was an accomplice was for the jury and not a matter of law for the court.

The ninth, tenth and eleventh assignments, based upon the answers of the trial judge to the twenty-second, twenty-third and twenty-fourth points, raise the questions upon which stress was laid at the oral argument. The twenty-third point and the answer to it are typical of a matter concerning which earnest

complaint is made in behalf of appellants. The point
and answer read:

"23. Every count in this indictment charges these
defendants with wilful misconduct in office. The term
'wilful' denotes not only a knowledge of the thing, but
a determination with a bad intent to do it or to omit
doing it. It means not merely voluntarily, but with a
bad purpose and signifies an evil intent without justi-
fiable excuse.

"By the court: This point is affirmed except in so
far as it relates to counts one and three in the indict-
ment."

The contention is that the jury was instructed that
the Commonwealth was not bound to show that appel-
lants acted wilfully and from a corrupt motive in sell-
ing the tracts referred to in the first and third counts,
as opposed to acting under "an honest mistake or
error of judgment in the exercise of their official
powers," or even negligently. If the point and answer
stood alone some support would be furnished for the
contention of appellants and a serious question would
be raised.

However, they do not stand alone and must be read
in connection with the general charge and in connec-
tion with all the instructions given the jury upon this
phase of the case. Manifestly, the exclusion of counts
one and three from the affirmance of the point was
based upon a clear and, we think, proper distinction
made by the trial judge in the general charge, and
throughout his answers to points, as between the first
and third counts of the indictment and the remaining
counts.

The first and third counts charged a dishonest and
wilful violation by appellants of their *statutory* duty
to give legal notice of the time and place of the sale
of the tracts therein described and the omission to give
such notice was the foundation for the charge.

14

The remaining counts did not have as their basis the failure to perform a *statutory* duty; for instance, the seventh count charged misbehavior with respect to the sale to Trambley on January 24, 1933, of warrant No. 3775 in Highland Township. The fact that that land would be exposed for sale on that date had been advertised in newspapers, but the misbehavior charged was that appellants had unlawfully and deceitfully misled the former owners of the property and other prospective purchasers by notifying them that it would not be offered for sale until June, 1933.

Having in mind this distinction, the trial judge in his general charge said:

"If you should find from all of the credible evidence in the case that the defendants did sell these warrants [described in the first and third counts] without first having advertised the same for sale as required by law, then we say to you as a matter of law, that they were guilty of an illegal act, and if you *further* find from all of the credible evidence in this case that their failure to so advertise was *fraudulent and wilful,* then you should find the defendants guilty on the first and third counts of the indictment. On the other hand, should you find that the sale of these warrants was without proper advertisements, and therefore, illegal, but *not fraudulent and wilful,* or should you not be satisfied beyond a reasonable doubt that the sale was fraudulent and wilful then your verdict should be not guilty on the first and third counts of the indictment . . . . . .

"As none of the other counts in the indictment charge the failure to perform a legal duty, but charge only the common law offense of misconduct or misdemeanor in office, which offense I will define to you later, it is incumbent upon the Commonwealth, in order to be entitled to a conviction, to prove that the acts charged in the other counts of the indictment, that is in counts two, four, five, six, seven, eight, nine, ten,

eleven, twelve and thirteen, were corruptly committed, that is with an evil design, purpose or motive, that is for the purpose of obtaining some advantage or gain for themselves or others, or with some other such bad purpose, design or motive.

"Misconduct or misdemeanor in office, in its penal sense, is any act or omission in breach of a duty of public concern by one who has accepted public office, provided his act is wilful and corrupt and is not judicial."

In addition to these clear instructions, the following colloquy, with specific reference to counts one and three, occurred at the conclusion of the charge when the trial judge invited criticisms or suggestions: "By Mr. Margiotti, of counsel for the defense: Now, if the court please, may we ask the court to charge the jury more specifically in reference to counts one and three to the effect that even though there was no advertisement, while that might under the law be an unlawful act, still the jury before they can convict on counts one and three must find that the act was done intentionally, fraudulently and unlawfully. By the court: I have already charged them to that effect. By Mr. Margiotti, of counsel for the defense: I know, but I was afraid there might be some misunderstanding about it. By the court: I subscribe to what you have said and so charge the jury."

In view of all that was said upon this question, we are convinced there is no room to doubt that the jury clearly understood there could be no conviction on counts one and three unless they found from the evidence that the omission to give notice that the lands therein described would be exposed for sale on January 24, 1933, was a wilful and fraudulent violation of appellants' statutory duty. It is sufficient answer to the criticism that the court declined, at the request of their counsel, to amplify its definition of the word

'wilful,' to say that in the general charge this acceptable definition was given: "By wilfully is meant intentionally, voluntarily, purposely, deliberately or designedly as opposed to inadvertently, accidentally or involuntarily."

The eighth assignment is based upon the refusal of the court to affirm, without qualification, the twenty-first point, reading:

"21. Even though the jury find that these defendants did illegally exercise their authority because of a mistake in the law, still, if they acted in good faith in so doing, your verdict must be not guilty."

The original reply of the court to this point was: "This point is refused,—a mistake as to what the law is does not excuse the commission of a crime even though the accused acted in good faith." At the conclusion of the charge the trial judge modified the above answer to read as follows: "This point is refused so far as it relates to counts one and three and is affirmed so far as it relates to all the other counts in the indictment."

The point as drawn made no distinction as between a mistake due to ignorance of the duties imposed upon appellants by statute and an honest mistake or error of judgment in the performance of non-statutory duties. As to the former, it was said in Com. v. Rosser et al., supra, and in many other authorities: "Public officers with mandatory duties to perform under the law are presumed to know the law, and if they wilfully do an act which is in violation of that mandatory duty, it becomes an indictable offense." The final answer of the court to this point, particularly in the light of its unqualified affirmance of the twentieth point, was, we think, a proper instruction under the indictment and the evidence in this case. The twentieth point read:

"20. Even though the jury find that the defendants were guilty of mere errors in judgment, or departures

from sound policy, such conclusion is not sufficient upon which to base a verdict of guilty, and before such a verdict can be sustained, it must be shown that there was palpable omission of duty imperatively required by law in a matter involving no discretion, or a wilful and corrupt, as well as palpable neglect, of a discretionary duty.''

The twelfth assignment complains of the refusal, without reading, of appellant's twenty-sixth point. The subject matter of this point had been fully covered in the general charge and in the answers to other points.

The thirteenth assignment is based upon the refusal of the twenty-ninth point. In this point the trial judge was asked to charge that if the jury found that on October 21, 1932, the sale was ''adjourned until the next regularly advertised commissioners' sale to be held in the early part of the year 1933 but not later than the first Monday of March, and that within a week thereafter the commissioners did fix the date of the next regular commissioners' sale as January 24, 1933,'' and advertised that a commissioners' sale would be held on that date, and sold the tracts to the ''highest bidder'' at that sale, the verdict must be not guilty. This was equivalent to asking the court to charge that if the adjournment of October 21, 1932, was made in the manner testified to by Ledden, such an adjournment was a compliance with the statutory duty imposed upon appellants. The trial judge properly refused to so charge and again said, in effect, that if appellants sold these warrants without further notice than that given under their own version of the announcement made on October 21, 1932, such action was illegal.

If we assume that the commissioners had authority in law to adjourn the sale of these lands from time to time, their own testimony demonstrates that the date in 1933 upon which they intended to expose them for

sale could not possibly have been known from anything that appellants claim was said at the time of the adjournment, nor was there the slightest intimation in the advertisement of a sale on January 24, 1933, of other unredeemed lands, that these tracts would be offered at that time.

Another assignment, the fourteenth, complains of the refusal of appellants' thirty-second point in which the court was asked to say to the jury that it had no right to compare the amount of costs, taxes and accrued interest that may have been due on any of the properties with the price at which they were sold to Trambley. Under all the circumstances present in this case we think the point was properly refused.

We are not persuaded that any reversible error was committed in answering appellants' points. The verdict was discriminating, logical, and consistent with the evidence. It demonstrates clearly that the jury, after giving appellants the benefit of every reasonable doubt and acquitting them of intentional wrongdoing in the performance of non-statutory duties, were led by the compelling force of the evidence, including that of the appellants themselves, to the conclusion that in making the sales mentioned in the first four counts they were guilty of a plain omission to perform their statutory duty and that their failure to perform that duty was wilful and prompted by corrupt motives.

Of the remaining assignments, those numbered from fifteen to twenty-two relate to matters which occurred during the taking of the testimony. Reference has already been made to the evidence of E. N. Wallis to the effect that Brown told him that the gas companies owned the adjoining lands and were interested in getting the tracts covered by the first and third counts, but that he (Brown) would prevent them from obtaining these lands by adjourning the sale to some time when their representatives would not know of it.

Brown denied having made this statement to Wallis. Counsel for the Commonwealth called Wallis in rebuttal; he testified Brown had made the statement to him about a year prior to the sale. Upon cross-examination, Wallis was asked by counsel for appellants whether he had ever told this story to any other person; the witness replied he had told it to E. L. Myers. Counsel for appellants called Myers in sur-rebuttal and he denied that Wallis had ever said anything to him about the alleged statement by Brown. On his cross-examination, counsel for the Commonwealth was permitted, over the objection of appellants' counsel, to ask Myers whether he had not had a conversation with Wallis between September and November, 1933, regarding this matter, and whether he had not requested Wallis to endeavor to prevent the adoption by a post of the American Legion of a resolution requesting a grand jury investigation of the charges against the commissioners; Myers denied he had ever made such request of Wallis. When recalled, Wallis asserted he had. The matter seems to have originated from the question put to Wallis upon his original cross-examination by counsel for appellants. Obviously, the questions objected to were for the purpose of testing Myer's credibility. Except as bearing upon the credibility of these witnesses, the references to the resolution were to a matter immaterial to the issue at the trial and the objection to the question might well have been sustained. The extent of such examination is largely within the discretion of the court. In the light of the termination of the controversy between these witnesses, we are not convinced there was an abuse of discretion or that appellants were harmed by the ruling.

The offer by appellants to show, during the cross-examination of O'Neill, the amount of certain bids which had been accepted in 1924 and 1930 for lands

then sold was, we think, properly excluded, as well as the offer to show by a witness, Knupp, that, in his opinion, the lands were of but little value. The Commonwealth did not offer any evidence of the actual value of the tracts; it showed what prospective purchasers were willing to bid and that appellants had knowledge of these amounts. The offer to show that the practice of appellants in conducting and adjourning sales of unredeemed land was similar to that in vogue in Warren County was clearly inadmissible.

When Wiesner was under direct examination by his own counsel, he testified, over the objection of counsel for Brown and Ledden, that upon learning the circumstances of the adjournment of October 21, 1932, he proposed, at a meeting of the commissioners in July, 1933, that a petition be presented to the court asking that the sales to Trambley be set aside, but Brown and Ledden refused to join with him.. He stated further, during cross-examination, that the county solicitor was also present at the conference. Counsel for Brown and Ledden now complain that they were not given sufficient latitude in further cross-examining the witness in an effort to have him admit that no such conversation took place in the presence of the county solicitor. The complaint is without merit; they were not denied the right to examine the solicitor upon that subject.

It is contended that the testimony of Straub (an attorney associated with the county solicitor) who testified that he informed Brown that he had seen figures in Thurston's note-book indicating the amount Thurston was prepared to bid, should not have been received because it amounted to the disclosure of a confidential communication. Assuming that Brown was Straub's client, the communication was not one ''made to him by his client''—the language of the prohibition of our statute. Granting also that the general rule includes

communications by the attorney to his client, its purpose is to prevent the attorney's statements from being used as admissions of the client, or as leading to inferences of the tenor of the client's communications. Neither the statute nor the general rule was violated in the trial of this case.

Assignments twenty-three and four are to the refusal of a new trial and the imposition of sentence.

Upon a painstaking examination of this record, containing more than five hundred and fifty printed pages, and of the able briefs upon both sides, we are convinced that the verdict is fully supported by the evidence; that no reversible error was committed in admitting or excluding testimony; that the charge as a whole was a correct and impartial presentation to the jury of the issues involved; and that the appellants have therefore had the fair trial to which they were entitled.

The judgment in each appeal, including removal from office, is affirmed; and it is ordered that the appellants appear in the court below at such time as they may there be called and that they be by that court committed until they have complied with their respective sentences, or any part thereof which had not been performed at the time supersedeas orders were granted in these appeals.

JAMES, J., dissents.