378 A.2d 338

COMMONWEALTH of Pennsylvania

v.

Dale RICHEY, Appellant.

COMMONWEALTH of Pennsylvania

v.

Thomas BORRIS, Appellant.

COMMONWEALTH of Pennsylvania

v.

Raymond MARTRAY, Appellant.

Superior Court of Pennsylvania.

Argued April 15, 1977.

Decided Oct. 6, 1977.

Charles C. Gentile, Uniontown, for appellant at No. 920.

Donald J. McCue, Connellsville, for appellant at No. 921.

R. W. Ziegler, Jr., Pittsburgh, for appellant at No. 976.

Joseph E. Ferens, Jr., Uniontown, with him Conrad B. Capuzzi, District Attorney, Uniontown, for Commonwealth, appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE and SPAETH, JJ.

JACOBS, Judge.

The criminal convictions from which these appeals were taken are part of a series of cases generally known as the "Connellsville Police Cases." All three appellants were charged with conspiracy,[1] robbery,[2] and theft by unlawful taking,[3] stemming from an incident on April 28, 1972, during which the manager of the "Foodland" store in Connellsville was relieved of the store's daily receipts. Appellant Richey, a former policeman, was convicted on all three counts, as was Thomas Borris, a civilian. Raymond Martray, also a former policeman, was convicted of conspiracy only. These appeals followed. We affirm in part, and vacate and remand in part.

 Several issues are raised by all three appellants. One of those is that the trial court erred in refusing to give a "corrupt source" charge with respect to the testimony of Lucinda Borris and Sue Wedge.[4] Such a charge was given with respect to Marvin Wedge's testimony which, if believed, clearly established Mr. Wedge as an accomplice. The trial court, after reviewing the undisputed testimony of Mrs. Borris and Mrs. Wedge, concluded that they were not accomplices in the crimes charged, and that a corrupt source charge with respect to their testimony was not warranted. "[T]he test of determining if one is an accomplice of the

1. Act of December 6, 1972, P.L. 1482, No. 334, § 1, 18 Pa.C.S. § 903 (1973).

2. Act of December 6, 1972, P.L. 1482, No. 334, § 1, 18 Pa.C.S. § 3701 (1973).

3. Act of December 6, 1972, P.L. 1482, No. 334, § 1, 18 Pa.C.S. § 3921 (1973).

4. Although argued on appeal, this issue was not preserved by appellant Richey, since it was not raised in post-trial motions. In regards to appellants Martray and Borris, the Commonwealth argues that this issue is waived since, despite the fact that a written point for charge was submitted on this matter, no objection was made following the trial judge's charge. *See Commonwealth v. Whyatt*, 235 Pa.Super. 211, 340 A.2d 871 (1975). In this case, however, when the trial court denied appellants' point for charge, an exception was noted by the judge on behalf of appellants. We believe this sufficiently protected the record.

accused on trial is whether or not he could be indicted and punished for the crime with which the accused is charged." *Commonwealth v. Hopkins*, 165 Pa.Super. 561, 564, 69 A.2d 428, 430, *allocatur refused*, 165 Pa.Super. *xxv* (1949); *see also Commonwealth v. Staudenmayer*, 230 Pa.Super. 521, 326 A.2d 421 (1974). In addition, the rule is clear that when the facts concerning the participation of a witness in the crime with which the defendant is charged are undisputed, the trial court, not the jury, determines whether or not the witness is an accomplice. *Commonwealth v. Brown*, 116 Pa.Super. 1, 175 A. 748 (1934); *Commonwealth v. Staudenmayer*, supra.

The testimony of Lucinda Borris and Sue Wedge, appearing at pages 155–200 in the Notes of Testimony, reveals the role played by them to be as follows: Neither woman participated in the planning of the robbery, although both had overheard their husbands discussing the matter on at least two occasions. On the night of the robbery Sue Wedge and her daughter spent the evening at the Borris home. When their husbands returned home, each woman was given $2,300.00, that sum representing the husbands' share in the proceeds of the robbery. The next day, at their husbands' directions, the two women attempted to dispose of the weapon used in the course of the robbery, an attempt that ultimately proved unsuccessful. Cindy Borris testified that she was against the robbery from the very beginning, but was under the impression that as the wife of Tom Borris, she could not make statements against him, thus explaining her silence until after she and Mr. Borris were divorced. From these facts, the trial judge found that Mrs. Wedge and Mrs. Borris did not have the requisite shared criminal intent to make them accomplices.

Mere knowledge that a crime is about to be committed does not render the person with such knowledge liable for the commission of the offense. *Commonwealth v. Giacobbe*, 341 Pa. 187, 19 A.2d 71 (1941). Furthermore, receiving stolen property does not make one an accomplice of the person who illegally obtained the property. *Common-*

*wealth v. Cohan*, 177 Pa.Super. 532, 111 A.2d 182, *allocatur refused*, 177 Pa.Super.Ct. *xxvi* (1955). The trial court found that Sue Wedge and Cindy Borris lacked criminal intent and did not participate in any criminal act until after the robbery. An accessory after the fact is not an accomplice,[5] *Commonwealth v. Scoggins*, 451 Pa. 472, 304 A.2d 102 (1973). Thus we find no error in the court's refusal to give a corrupt source charge with respect to the testimony of Mrs. Wedge and Mrs. Borris.

 The second issue raised by all three appellants concerns the refusal of the lower court to grant a change of venue. Whether or not such a request should be granted rests within the discretion of the lower court. *Commonwealth v. Stolfzfus*, 462 Pa. 43, 337 A.2d 873 (1975). In exercising its discretion, the trial court must consider the extent of the pre-trial publicity. *See, e. g., Commonwealth v. Frazier*, 471 Pa. 121, 369 A.2d 1224 (1977), and cases cited therein. Included in this analysis is the consideration of the size and nature of the community exposed to the publicity. *Commonwealth v. Hoss*, 445 Pa. 98, 283 A.2d 58 (1971). Additionally, an important factor is how much "cooling off" time has passed from the peak of the publicity until the time of trial. *Commonwealth v. Nahodil*, 462 Pa. 301, 341 A.2d 91 (1975). The court must then consider the nature of the publicity. As the publicity ceases to be factual and becomes more inflammatory, the need for the change of venue increases. *Sheppard v. Maxwell*, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966). The source of the publicity may also weigh in the court's determination. *Commonwealth v. Pierce.* 451 Pa. 190, 303 A.2d 209 (1973). Finally, this Court recently said that the notoriety of a particular defendant prior to the publicity resulting from his arrest should be

5. Similarly, under the Crimes Code, these witnesses could not be accomplices because their conduct is specifically covered in § 5105(a)(3) Hindering Apprehension or Prosecution, and therefore they could not be indicted as principals. Section 5105(a)(3) is violated if a person conceals or destroys evidence of the crime, or tampers with a witness, informant, document or other source of information, regardless of its admissibility in evidence.

considered in light of the tendency of the public to follow such news items more closely than those involving strangers. *Commonwealth v. Capser,* 249 Pa.Super. 21, 375 A.2d 737 (1977).

This Court recently reviewed the denial of a change of venue in a case with facts very similar to the one at bar. That case, *Commonwealth v. Mancuso,* 247 Pa.Super. 245, 372 A.2d 444 (1977), was also one of the "Connellsville Police Cases." The defendant, Dominic Mancuso, had been the Chief of the Connellsville Police Department. For the most part, the publicity complained of in the *Mancuso* case consisted of the same newspaper articles and other media releases as comprise the record in this case. We are thus constrained to conclude as we did in *Mancuso,* that while the extent of the publicity was considerable, it was primarily factual in nature. Neither in this case nor in the *Mancuso* case were there any indications of prosecutorial misconduct concerning the source of the publicity. The trial in this case took place two months prior to the *Mancuso* trial, thus arguably there was not as much cooling time in the case at bar. On the other hand, a great deal of the publicity focused on Mancuso, since he was a well-known official prior to the publicity, unlike the appellants in this case.

It is agreed that there was a great deal of publicity in this case. In many such cases, however, a change of venue may not be necessary to protect the accused's rights if the lower court employs alternative means to insure that an impartial jury is selected. *Commonwealth v. Mancuso,* supra. The lower court did just that in the present case. Voir dire was conducted individually, out of the hearing of the rest of the jury panel. Counsel for all parties were permitted to conduct the voir dire following initial questions by the court. The voir dire was exhaustive, comprising over 500 pages of the record. Challenges for cause were liberally granted, often on the motion of the court. The attorneys for the defense were granted broad latitude in probing for possible prejudices of veniremen. We believe the measures

taken by the lower court were adequate to insure an impartial jury and thus we find no abuse of discretion.

■ Appellants next argue that the statute of limitations had run with respect to some of the crimes with which they were charged. Appellants Martray and Richey raise this issue concerning the conspiracy charge, and appellant Borris challenges both the conspiracy and the theft charge. The incident giving rise to the charges took place on April 28, 1972. The indictments were approved by the grand jury in August 1975. Clearly the indictments were brought beyond the two year statute of limitations for conspiracy and theft, but within the five year period for robbery.[6] The question was not raised, however, until the posttrial motion stage. Since no pretrial application for relief was made on this ground and the issue was raised at no time prior to the verdict, the lower court properly refused to consider it. Appellants have obtained new counsel for appeal purposes and now allege that trial counsel was ineffective for failing to raise the matter of the statute of limitations. This claim is proper on direct appeal with new counsel. *Commonwealth v. Dancer*, 460 Pa. 95, 331 A.2d 435 (1975).

■ To determine whether appellants were denied effective assistance of counsel, we must inquire as to the existence of some reasonable basis for counsel's failure to raise the defense of statute of limitations. *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 235 A.2d 349 (1967). Of course, if the defense had no merit, our inquiry would then cease. *Commonwealth v. Hubbard*, 472 Pa. 259, 372 A.2d 687 (1977). In the instant case, however, it is apparent that portions of the indictments would have been quashed had the statute of limitations been raised, so we must proceed to determine whether there was a reasonable basis for failing to do so. We are unable to determine from the record whether or not such a reasonable basis existed. The

**6.** Since these acts took place prior to the effective date of the Crimes Code, the applicable statute of limitations appears at 19 P.S. § 211 (1964). *See Commonwealth v. Patterson*, 236 Pa.Super. 131, 344 A.2d 710 (1975).

Commonwealth has suggested hypothetical reasons why counsel may not have raised the statute of limitations. However, since we will not manufacture a reasonable basis not supported by the record, we must remand for an evidentiary hearing to determine why counsel did not raise the statute of limitations defense. *Commonwealth v. Twiggs*, 460 Pa. 105, 331 A.2d 440 (1975). If it is determined that trial counsel had a reasonable basis for their actions, the judgments of sentence shall be reinstated.

■ A fourth issue is raised only by appellants Richey and Borris. That issue involves the reference by the prosecuting officer, Trooper Nickle, to the large number of indictments pending against all the "Connellsville" defendants, including appellants.[7] Neither Richey nor Borris filed specific post-trial motions concerning the questions asked Trooper Nickle. Counsel for appellant Richey did attempt to have the issue considered by filing a brief before the court en banc, and the lower court properly refused to consider matters not raised in compliance with Pa.R.Crim.P. 1123(a). Since the failure to raise this issue in post-trial motions occurred well after the decision in *Commonwealth v. Blair*, 460 Pa. 31, 331 A.2d 213 (1975), we must likewise refuse to consider it on appeal. *Commonwealth v. Bailey*, 463 Pa. 354, 344 A.2d 869 (1975).

■ A fifth issue is raised by appellant Borris alone. One of the indictments charged him as follows:

"Count I: On or about April 28, 1972, in Fayette County, Thomas Borris unlawfully and feloneously did take, or

7. Although the matter is not properly before us, a review of the record appears to support the Commonwealth's position that defense counsel had opened the door to such an inquiry by questioning Trooper Nickle concerning the number of complaints filed against other civilian "Connellsville" defendants not charged in the specific incident involved in this case. Counsel was attempting to show that Trooper Nickle had pursued the cases involving policemen more diligently than those involving civilians, thus creating the impression of a "witch hunt." The prosecution questions were an attempt to blunt that implication. No mention was ever made concerning pending indictments against the particular defendants in this case.

exercise unlawful control over, movable property of another, with intent to deprive him thereof."

The indictment goes on to specify the property taken and the person from whom it was taken. The following citation to the Crimes Code appears on the lower portion of the indictment: "Theft By Unlawful Taking or Disposition 3921." The alleged activity, however, took place prior to the effective date of the Crimes Code, and appellant argues that he thus was improperly convicted of a crime which did not exist at the time of his act. Appellant concedes that the substantive portion of the indictment sufficiently alleges the common law crime of larceny as it was recognized under the old Penal Code.[8] His only complaint is that the indictment reads "Theft by unlawful taking" instead of "Larceny." We are not convinced that appellant Borris suffered prejudice.

 The required contents and form of indictments are set forth in Pa.R.Crim.P. 213. Subsection (a) sets forth the requirements of the substantive portion of the indictment. Subsection (b) reads as follows:

"The indictment shall contain the official or customary citation of the statute and section thereof or other provision of law which the defendant is alleged therein to have violated; *but the omission of or error in such citation shall not affect the validity or sufficiency of the indictment.*" (Emphasis added.)

The comment to Rule 213 goes on to say that omissions or errors of the type in subsection (b) are formal defects which can be cured by amendment as provided by Pa.R.Crim.P. 220. *See* Pa.R.Crim.P. 213, Comment. Appellant cannot on appeal raise for the first time a formal defect in the indictment. *Commonwealth v. Mitchell,* 234 Pa.Super. 21, 335

---

8. Section 4807 of the Penal Code prohibited larceny but did not define it, thus prior to the Crimes Code, the common-law definition of larceny was used in this Commonwealth. *Commonwealth v. Meinhart,* 173 Pa.Super. 495, 98 A.2d 392 (1953). Common-law larceny is ". . . the taking and carrying away of the personal property of another with the mind of a thief, that is, with the specific intent to deprive the owner permanently of his property." *Commonwealth v. Lyons,* 219 Pa.Super. 18, 280 A.2d 458 (1971) (citation omitted).

A.2d 521 (1975). In any event, appellant Borris was sufficiently apprised of the charge against him, whether it was referred to as "larceny" or "theft by unlawful taking."

■ Two final arguments are raised only by appellant Martray. The first of those is that the trial judge made certain misstatements of fact in summarizing the facts for the jury. A review of the record indicates that on two occasions the trial judge specifically asked if defense counsel had any corrections they wished to make concerning the judge's summation and charge. On both occasions, counsel for appellant Martray replied in the negative. Failure to request any corrections bars appellant from raising his objection at the post-trial stage for the first time, and thus the matter is waived. Pa.R.Crim.P. 1119(b).

■ The last argument raised by appellant Martray is that the evidence was insufficient to sustain his conviction of conspiracy. We find this claim to be completely frivolous. Martray's role in the robbery was explicitly set forth by at least three witnesses, albeit one of them was an admitted accomplice. In addition, there was a great deal of circumstantial evidence, as set forth in the lower court opinion, upon which the jury could base its verdict.

The robbery convictions of appellants Borris and Richey, at Nos. 458 and 273 respectively, are affirmed. Appellant Richey's conviction of theft by unlawful taking, at No. 273½, is affirmed. Appellant Borris' theft conviction at No. 458⅓, and the conspiracy convictions of all three appellants, are vacated and remanded for a determination of counsel's effectiveness in failing to raise the statute of limitations.

VAN der VOORT, J., did not participate in the consideration or decision of this case.