J-S31021-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| TYRELL BOYD | |
| Appellant | No. 441 MDA 2015 |

Appeal from the Judgment of Sentence December 18, 2014
In the Court of Common Pleas of Lycoming County
Criminal Division at No(s): CP-41-CR-0001467-2013

BEFORE:  SHOGAN, J., OTT, J., and STRASSBURGER, J.[*]

MEMORANDUM BY OTT, J.:                               **FILED JULY 08, 2016**

Tyrell Boyd appeals from the judgment of sentence imposed December 18, 2014, in the Lycoming County Court of Common Pleas.  The trial court sentenced Boyd to an aggregate term of life imprisonment following his jury conviction of first-degree murder, aggravated assault, persons not to possess firearms, firearms not to be carried without a license, and flight to avoid apprehension, trial or punishment.[1]  On appeal, Boyd, contends the trial court erred by:  (1) permitting the Commonwealth to enter into evidence a timeline of events, (2) refusing Boyd's requested jury

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 2501, 2702(a), 6105(c)(2), 6106(a)(1), and 5126(a), respectively.

instructions, and (3) determining which exhibits would be given to the jury during deliberations.[2]  For the reasons below, we affirm.

The facts and procedural history underlying this appeal are aptly summarized by the trial court as follows:

> On July 20, 2013, [Boyd] shot Ansari Wilson inside a residence at 1510 Scott Street in Williamsport, Pennsylvania.  In the day or hours prior to the shooting, [Boyd] and Mr. Wilson had disagreements over money, and [Boyd] told Reginald Morton that he might have to "down Mook" (shoot Mr. Wilson).  Just prior to the shooting, witnesses saw [Boyd] walking towards 1510 Scott Street together with another young African American male who was riding a bike.  [Boyd] had a black handgun tucked inside the waist of his pants and he was talking on a cell phone.  Witnesses heard [Boyd] tell the person on the other end of the conversation that he was on the block, and then [Boyd] angrily said "now what" and "I don't play" several times.  [Boyd] hung up the phone and entered the residence at 1510 Scott Street.  Shortly thereafter, the witnesses heard gunshots and [Boyd] yelling "I don't play" and/or "I told you I don't play."  [Boyd] quickly came out of the residence, took the bike from the other individual, got on the bike, and left.
>
> [Boyd] fled to Reginald Morton's residence where he changed his shirt before ultimately fleeing to Philadelphia.
>
> A witness who heard the shots called 911.  Police and emergency medical personnel responded to 1510 Scott Street.  The police kicked in the door and found Mr. Wilson near the door lying on his back, covered in blood and gasping for air.  Shortly thereafter, Mr. Wilson died from a gunshot wound to the torso.
>
> The police apprehended [Boyd] in Philadelphia.
>
> [Boyd] was charged with [the above stated offenses.]

_____

[2] We have reordered and consolidated Boyd's claims for purposes of disposition.

- 2 -

A trial was held November 3-7, 2014. [Boyd] was convicted of all the charges, including first degree murder.

On December 18, 2014, the court sentenced [Boyd] to life without parole for first degree murder. [On the remaining counts, the court imposed a sentence of three and one-half to seven years' incarceration for carrying a firearm without a license, five to 10 years' incarceration for person not to possess firearms, and one and one-half to seven years' incarceration for flight to avoid apprehension. These sentences ran consecutively to each other but concurrently to the sentence for first-degree murder. Boyd's aggravated assault conviction merged for sentencing purposes.]

On December 29, 2014, [Boyd] filed a post-sentence motion, in which he challenged the sufficiency and weight of the evidence for his first degree murder conviction. The court denied this motion in an opinion and order entered on March 5, 2015.

[Boyd] filed his notice of appeal on March 10, 2015.[3]

Trial Court Opinion, 5/9/2015, at 1-2 (footnote omitted).

First, Boyd challenges the ruling of the trial court permitting the Commonwealth to introduce into evidence a timeline of events leading up to and immediately following the shooting. The exhibit, prepared by the Commonwealth, includes information gathered from "six different sources,"[4]

_____

[3] On April 1, 2015, the trial court ordered Boyd to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Boyd complied with the court's directive, and filed a concise statement on April 14, 2015.

[4] Boyd's Brief at 21. The timeline was assembled based on the phone records of Boyd, his girlfriend, and the Lycoming County Communications Center, as well as video surveillance footage from three separate cameras. *See id.* at 21-22.

and tracks both the victim's and Boyd's movements prior to the shooting, and Boyd's actions after leaving the crime scene. Boyd argues the timeline conveyed "a false sense of accuracy and legitimacy" because the times on the various devices were not synchronized. Boyd's Brief at 20. Accordingly, Boyd asserts, "given the relative importance of that particular exhibit … the timeline's probative value was outweighed by the danger of unfair prejudice." *Id.* at 23.

Our review of a trial court's ruling on the admissibility of evidence is well-established:

> The admissibility of evidence is a matter for the discretion of the trial court and a ruling thereon will be reversed on appeal only upon a showing that the trial court committed an abuse of discretion. "An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous."

*Commonwealth v. Poplawski*, 130 A.3d 697, 716 (Pa. 2015) (citations omitted).

Specifically, when considering the admissibility of demonstrative evidence, our Supreme Court has explained:

> [A] trial court may admit demonstrative evidence whose relevance outweighs any potential prejudicial effect. *Commonwealth v. Reid*, 571 Pa. 1, 811 A.2d 530, 552 (2002), *cert. denied*, 540 U.S. 850, 124 S.Ct. 131, 157 L.Ed.2d 92 (2003). The offering party must authenticate such evidence. "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Pa.R.E. 901(a). Demonstrative evidence

may be authenticated by testimony from a witness who has knowledge "that a matter is what it is claimed to be." Pa.R.E. 901(b)(1). Demonstrative evidence such as photographs, motion pictures, diagrams, and models have long been permitted to be entered into evidence provided that the demonstrative evidence fairly and accurately represents that which it purports to depict. ***See Nyce v. Muffley***, 384 Pa. 107, 119 A.2d 530, 532 (1956).

The overriding principle in determining if any evidence, including demonstrative, should be admitted involves a weighing of the probative value versus prejudicial effect. We have held that the trial court must decide first if the evidence is relevant and, if so, whether its probative value outweighs its prejudicial effect. ***Commonwealth v. Hawk***, 551 Pa. 71, 709 A.2d 373, 376 (1998). This Commonwealth defines relevant evidence as "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Pa.R.E. 401. Relevant evidence may nevertheless be excluded "if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Pa.R.E. 403.

***Commonwealth v. Serge***, 896 A.2d 1170, 1177 (Pa. 2006), *cert. denied*, 549 U.S. 920 (2006).

In the present case, the trial court overruled Boyd's objection to the timeline, finding that his argument regarding the synchronization of the devices "went to the weight of the evidence, not its admissibility." Trial Court Opinion, 11/9/2015, at 5. The court opined:

The timeline was based on and supported by the surveillance videos, the phone records and the testimony that [were] admitted into evidence. [Boyd's] insistence that the Commonwealth was required to show that the cell phones and surveillance cameras were "in sync" was patently unreasonable. Prior to committing a crime, a perpetrator does not synchronize his or her electronic devices with the devices of the victim, the potential witnesses or the neighborhood surveillance cameras.

- 5 -

Nevertheless, the cell phones probably were "in sync" with each other since cell phones typically contain a radio-controlled clock.

*Id.* at 6.

We find no reason to disturb the ruling of the trial court. First, Boyd does not dispute that the information on the timeline, with respect to each device, was properly authenticated by Williamsport Police Agent Kevin Stiles. *See* Boyd's Brief at 22. Agent Stiles testified the timeline was prepared using information he derived from phone records and surveillance video cameras. *See* N.T., 11/5/2014, at 101-106. Because the video surveillance cameras did not calculate seconds, the officer estimated the times for the screenshots by "watch[ing] the clock" as the video played. *Id.* at 110. The trial court specifically instructed the jury it was their responsibility to determine the credibility of the time estimates listed on the timeline:

[Agent Stiles] is estimating a time based upon what his testimony had indicated. Time may be a factor or may be an issue that you are going to have to decide. In evaluating the testimony and evaluating what time it may be, I think you're going to have to rely on your view of the evidence and your calculation of what the time will be.

*Id.* at 111-112. Therefore, we agree the information contained on the timeline was properly authenticated by the testimony of Agent Stiles.

Furthermore, we also conclude the evidence was relevant, and that its probative value outweighed any danger of unfair prejudice. The timeline consolidated evidence from various sources to provide the jurors with a fair representation of the events on the night in question. There is no dispute the timeline accurately represented the times on each individual device, and

the jury was well aware the clocks on the devices were not synchronized. **See** N.T., 11/6/2014, at 32-35. However, we agree with the trial court that fact related to the weight of the evidence, and not its admissibility. **See Commonwealth v. Loughnane**, 128 A.3d 806, 814 (Pa. Super. 2015) (permitting security officer to authenticate screenshot of security video that was subsequently destroyed; explaining "[a]ny issue as to the time discrepancy of the photograph is a matter of weight to be tested at trial, not of admissibility.").

Further, to the extent Boyd asserts the timeline was prejudicial because it unfairly minimized the time he spent in 1510 Scott Street before the shooting, we find this claim meritless. According to Boyd, the Commonwealth attempted to prove that he had already formulated an intent to kill Wilson before entering the Scott Street residence with "guns blazing." Boyd's Brief at 21. His defense, however, focused on his assertion that he fired his weapon "only after Wilson made an aggressive gesture toward [him]." **Id.** Therefore, he contends "[o]ne of the main findings of fact the jury had to make to decide the issues of malice and intent was to determine exactly how long Boyd was inside his residence at 1510 Scott Street with Wilson prior to firing the shot that killed him." **Id.**

Considering only the phone records from Boyd's cell phone, it appears Boyd received a phone call from Wilson at 17:25:59, and made a phone call, after the shooting, to Morton at 17:29:43. **See** Commonwealth's Exhibit 54. That evidence, in itself, demonstrates Boyd did the following in less than

four minutes: spoke with Wilson, approached and entered 1510 Scott Street, shot Wilson, fled the scene, and called Morton. Moreover, in any event, "[t]he law does not require a lengthy period of premeditation; indeed, the design to kill can be formulated in a fraction of a second." ***Commonwealth v. Jordan***, 65 A.3d 318, 323 (Pa. 2013), *cert. denied*, 134 S.Ct. 1275 (U.S. 2014). Accordingly, Boyd's first argument fails.

Next, Boyd challenges the trial court's refusal to provide a jury instruction identifying Morton as a corrupt source. Specifically, Boyd requested the trial court instruct the jury pursuant to Standard Suggested Criminal Jury Instruction 4.01 (accomplice testimony) or 4.06 (certain testimony subject to special scrutiny).[5] ***See*** N.T., 11/7/2014, at 9. However, the court refused to do so, and provided only a general instruction regarding witness credibility. ***See id.*** at 14, 81-83.

Boyd argues S.S.J.I. (Crim) 4.01 was applicable under the facts of the case because Morton was an accomplice to Boyd's charge of flight to avoid apprehension. Boyd's Brief at 17. Indeed, Morton permitted Boyd to hide at his home immediately after the shooting. He further asserts that "[a]t the very least, the trial court should have issued [S.S.J.I. (Crim)] 4.06," which charges the jury to closely examine the testimony of "an informer with a penal interest in the outcome" of the case. ***Id.*** at 19-20. Boyd emphasizes

---

[5] Pa. S.S.J.I. (Crim) 4.01 and 4.06.

Morton received a "very favorable plea agreement in exchange for his testimony," and the trial court "abused its discretion by refusing to call special attention to the considerable benefit Morton received by agreeing to testify for the Commonwealth."[6]  *Id.* at 16, 20.

Our review of a trial court's refusal to provide requested jury instructions is "one of deference-an appellate court will reverse a court's decision only when it abused its discretion or committed an error of law. *Commonwealth v. DeMarco*, 809 A.2d 256, 260-261 (Pa. 2002).

> It is established that appellate review of a trial court charge must involve a consideration of the charge as a whole to determine whether it was fair and complete.  The review does not focus upon whether certain "magic words" were included in the charge.  Rather, it is the effect of the charge as a whole that is controlling.
>
> *Commonwealth v. Saunders*, 529 Pa. 140, 602 A.2d 816, 818 (1992) (citing *Commonwealth v. Ohle*, 503 Pa. 566, 470 A.2d 61, 70 (1983)).  *See also Commonwealth v. Hawkins*, 567 Pa. 310, 787 A.2d 292, 301 (2001) ("When evaluating jury instructions, the charge must be read as a whole to determine whether it was fair or prejudicial. The trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration.").

_____

[6] Morton ultimately entered a guilty plea, in three separate cases, to charges of (1) fleeing and eluding police, (2) possession with intent to deliver heroin, and (3) hindering apprehension, for his actions in the present case.  *See* 75 Pa.C.S. § 3733, 35 P.S. § 780-113(a)(30), and 18 Pa.C.S. § 5105.  In exchange for his plea, the Commonwealth withdrew a number of charges, and agreed to a sentence of 18 months to five years' incarceration.  *See* N.T., 11/6/2014, at 84.

*Commonwealth v. Montalvo*, 986 A.2d 84, 99 (Pa. 2009), *cert. denied*, 562 U.S. 857 (2010). Moreover,

> [a] corrupt-source instruction is warranted where sufficient evidence is presented as to whether the witness is an accomplice. *Commonwealth v. Williams*, 557 Pa. 207, 732 A.2d 1167, 1181 (1999). An individual is an accomplice if, with intent to promote or facilitate the commission of the offense, he solicits, aids, agrees, or attempts to aid another person in planning or committing the offense. 18 Pa.C.S. § 306(c)(1).

*Commonwelth v. Treiber*, 121 A.3d 435, 459 (Pa. 2015).

In the present case, the trial court concluded that neither requested instruction was appropriate under the facts of this case. With respect to S.S.J.I. 4.01, the court found Morton was not an accomplice to the murder or Boyd's possession of a firearm. Trial Court Opinion, 5/9/2015, at 4. Morton's only involvement in the crime occurred after Boyd fled the scene of the shooting, and went to Morton's house. He asked Morton for a shirt and some rubbing alcohol, both of which Morton provided. It is well-settled that "an accessory after the fact, that is, one who aids the principal after the offense has been committed, is not an accomplice[.]" *Commonwealth v. Smith*, 495 A.2d 543, 550 (Pa. Super. 1985).

Moreover, although Morton was charged with hindering apprehension for allowing Boyd in his home and providing Boyd with a new shirt, the trial court found Morton's actions did not make him an accomplice to Boyd's charge of flight to avoid apprehension because there was no evidence Morton helped Boyd flee the area. Trial Court Opinion, 5/9/2015, at 4. Furthermore, the court opined:

- 10 -

> [E]ven if Mr. Morton could be considered an accomplice to that offense, [Boyd] was not seeking the jury instruction to attack Mr. Morton's credibility on that offense as [Boyd] readily admitted that he got scared and fled. Instead, [Boyd] was seeking the instruction solely to get the jury to disbelieve portions of Mr. Morton's testimony that supported the elements of malice and specific intent to kill on the homicide offense, such as his testimony that [Boyd] said he might have to "down [Wilson]." Clearly, [Morton] was not an accomplice with respect to the homicide offense. … The general credibility instruction clearly and accurately explained to the jury that it could consider a witness' bias or interest without confusing or misleading the jury into believing that Mr. Morton could be considered an accomplice with respect to the homicide or firearm offenses.

*Id.* at 4-5.

We find no error or abuse of discretion in the trial court's ruling. Morton did not participate in the shooting, nor did he aid Boyd in doing so. His only involvement was after the crime was committed. Accordingly, no accomplice charge was warranted. *See Commonwealth v. Richey*, 378 A.2d 338, 340 (Pa. Super. 1977) (finding no error in trial court's refusal to give corrupt source charge with regard to testimony of wife of defendant and wife of an accomplice; although women shared in proceeds of robbery, and attempted to dispose of weapon used in robbery after the fact, they "did not have the requisite shared criminal intent to make them accomplices.").

We also find the trial court did not abuse its discretion in refusing Boyd's request to charge the jury with S.S.J.I. 4.06. That charge instructs the jury to "examine closely and carefully and receive with caution" the testimony of certain witnesses. Pa. S.S.J.I. 4.06. The Advisory Committee Note explains that the charge "may be appropriate when the court wishes to

- 11 -

caution the jury about testimony that falls into a category subject to special scrutiny, e.g., previously hypnotized witness, admitter perjurer, paid informer, and, possibly, child witness." *Id.*, Advisory Committee Note. Further, the Note states:

> When an informer testifies who has a penal or pecuniary interest in testifying favorably to the Commonwealth, it seems to be largely, if not entirely within the discretion of the trial judge whether to rely on a general charge that the jury should consider the potential bias or interest of witnesses or to single out the informer's testimony for a special cautionary charge.

*Id.*

In the present case, the trial court determined that a special instruction was not necessary, and its general charge regarding the credibility of witnesses, as well as defense counsel's extensive cross-examination regarding Morton's plea agreement, was sufficient to put the jury on notice of Morton's potential bias. We again find no abuse of discretion on the part of the trial court, and, accordingly, deny relief on Boyd's second claim.

Lastly, Boyd argues the trial court erred in determining which exhibits would be given to the jury during deliberations. First, Boyd asserts the court erred in denying his request that the jury be permitted to review Morton's redacted guilty plea colloquy, and Boyd and Morton's cell phone records. *See* Boyd's Brief at 23. *See also* N.T., 11/7/2014, at 124-126. He states the colloquy was necessary to emphasize "the dire consequences that Morton faced prior to his decision to provide information to the

Commonwealth." Boyd's Brief at 25. Further, he contends the phone records were essential as the "only available neutral source of information that could have potentially resolved" credibility disputes, such as whether, as Morton claimed, "Boyd ever called Morton and said he might have to shoot Wilson." *Id.* at 24

Second, Boyd asserts the court erred in permitting the jury to review the Commonwealth's timeline, and two autopsy photos. *Id.* at 25. ***See also*** N.T., 11/7/2014, at 136-137, 139. He claims, once again, the timeline was misleading because the devices depicted on the exhibit were not synchronized. Moreover, with regard to the autopsy photos, Boyd contends "the only purpose the autopsy photos could have served was to [i]nflame the sympathies of the jury" because he admitted shooting Wilson, and the cause of death was not contested. Boyd's Brief at 26.

Pennsylvania Rule of Criminal Procedure 646, provides that "[u]pon retiring, the jury may take with it such exhibits as the trial judge deems proper," with the exception of certain specified exhibits, not relevant here, such as a trial transcript or a defendant's confession. Pa.R.C.P. 646(A), (C). In determining whether a trial court properly permitted or excluded certain items to be viewed by the jury, we are guided by the following:

> "Whether an exhibit should be allowed to go out with the jury during its deliberation is within the sound discretion of the trial judge." ***Commonwealth v. Merbah***, 270 Pa.Super. 190, 411 A.2d 244, 247 (1979) (citing ***Commonwealth v. Pitts***, 450 Pa. 359, 301 A.2d 646 (1973)); Pa.R.Crim.P. 1114 (renumbered 646, effective April 1, 2001).

- 13 -

> The underlying reason for excluding certain items from the jury's deliberations is to prevent placing undue emphasis or credibility on the material, and de-emphasizing or discrediting other items not in the room with the jury. If there is a likelihood the importance of the evidence will be skewed, prejudice may be found; if not, there is no prejudice per se and the error is harmless.
>
> **Commonwealth v. Dupre**, 866 A.2d 1089, 1103 (Pa.Super.2005) (quoting **Commonwealth v. Strong**, 575 Pa. 433, 836 A.2d 884, 888 (2003)).

**Commonwealth v. Barnett**, 50 A.3d 176, 194 (Pa. Super. 2012), *appeal denied*, 63 A.3d 772 (Pa. 2013). Moreover, when the exhibit in question is not specifically prohibited by subsection (C) of the Rule, "publication to the jury falls squarely within the discretion of the trial court and, thus, the decision cannot be overturned absent an abuse of discretion." **Id.**

First, with regard to the precluded exhibits, the trial court explained that it denied Boyd's request to allow the jury to review Morton's plea agreement because the document contained Morton's prior record score, which "would have informed the jury that Mr. Morton had prior criminal convictions." Trial Court Opinion, 5/9/2015, at 8. **See also** N.T., 11/7/2014, at 125. Although Boyd's attorney suggested the information could be redacted, the trial court disagreed, stating: "I'm not going to allow a document to go out to the jury that was in a different form than how it was introduced." N.T., 11/7/2014, at 125. With regard to the requested phone records, the court explained that "only specific phone calls were referred to during the testimony" and other calls contained in the records "were not discussed and did not appear to have any relevance to these

proceedings." Trial Court Opinion, 5/9/2015, at 9. Indeed, the court noted it also did not permit the jury to review any Commonwealth exhibits that were phone records. *Id.*

With regard to the Commonwealth's timeline, which the court did permit to go to the jury, the court explained that Boyd "objected for the same reasons that he objected to the admissibility of [the exhibit], and the court made the same ruling." *Id.* at 7. *See* N.T., 11/7/2014, at 136-137. We note that Boyd offers no further argument herein. Further, with regard to the autopsy photos, the court stated that it permitted the jury to review them because it found "the photgraphs were important to the Commonwealth's closing argument[,]" regarding the trajectory of the bullet. Trial Court Opinion, 5/9/2015, at 9. *See* N.T., 11/7/2014, at 60-61.

Upon our review of the record, including the aforementioned exhibits, we detect no abuse of discretion on the part of the trial court in allowing certain exhibits to be available to the jury during deliberations, but precluding others. The trial court provided a well-reasoned explanation for its rulings, and, accordingly, Boyd is entitled to no relief on this claim.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/8/2016

- 15 -