391 A.2d 621

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Timothy FINFROCK, Appellee.**

Superior Court of Pennsylvania.

Argued April 15, 1977.

Decided July 12, 1978.

James J. Conte, Assistant District Attorney, Greensburg, for Commonwealth, appellant.

Daniel Joseph, Assistant Public Defender, Greensburg, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE and SPAETH, JJ.

PRICE, Judge:

This is an appeal by the Commonwealth from the lower court's order dismissing with prejudice charges against the appellee because of the Commonwealth's alleged violation of Pa.R.Crim.P. 1100(a)(2).[1] We reverse.

On September 18, 1975, a complaint was lodged against appellee charging him with possession with intent to deliver and delivery of a controlled substance,[2] namely "meteamphetamine." The case was set for trial on March 15, 1976, 179 days after the filing of the complaint. On that day, appellee's counsel requested information concerning an eyewitness from the Commonwealth. The court ordered the prosecution to provide the witness' whereabouts and extended Rule 1100 to March 23, 1976, to allow the Commonwealth to comply. On March 22, appellee filed a motion to quash the indictment for failure to charge a criminal offense because meteamphetamine is not contained in the schedule of prohibited substances. The lower court denied the Common-

1. Pa.R.Crim.P. 1100(a)(2) provides: "Trial in a court case in which a written complaint is filed against the defendant after June 30, 1974 shall commence no later than one hundred eighty (180) days from the date on which the complaint is filed."

2. Act of April 14, 1972, P.L. 233, No. 64, § 13(a)(30), *as amended* (35 P.S. § 780–113(a)(30)).

wealth's motion to amend the indictment to identify proper-
ly the substance as "methamphetamine" and quashed the
indictment without prejudice on March 23, 1976. On that
same day, the Commonwealth filed a second complaint
charging appellee with possession with intent to deliver and
delivery of methamphetamine.

On June 1, 1976, appellee filed a motion to dismiss the
second complaint for the Commonwealth's failure to comply
with Pa.R.Crim.P. 1100. A hearing was held, after which
the court below granted the motion. The court reasoned
that the 180 day period began to run from the filing of the
first complaint.

We find the instant case to be controlled by *Common-
wealth v. Mumich*, 239 Pa.Super. 209, 361 A.2d 359 (1976),
wherein we held that Rule 1100 did not begin to run from
the filing of the first defective complaint, later dismissed,
but rather from the filing of the second complaint. In the
instant case, the Commonwealth had from March 23, 1976, to
September 20, 1976, to bring appellee to trial. The court
below therefore improperly dismissed the charges against
appellee.

The order of the lower court is reversed and the case is
remanded for trial.

HOFFMAN, J., concurs in the result.

SPAETH, J., files a concurring opinion.

WATKINS, former, President Judge, and VAN der
VOORT, J., did not participate in the consideration or deci-
sion of this case.

SPAETH, Judge, concurring:

I concur in the majority's conclusion, but I reach it by
different reasoning.

-1-

This case should have been tried on March 15, 1976—the
179th day. It could not be because the prosecutor had not

told defense counsel about a material eye witness. When the lower court ordered the prosecutor to tell counsel about the witness, it became apparent that by the time the prosecutor obeyed, the 180 day period would have run. It was therefore up to the prosecutor to file a petition asking the court to extend the 180 day period. *Commonwealth v. Shelton*, 469 Pa. 8, 12, 364 A.2d 694, 697 (1976); Pa.R.Crim.P. 1100(c). Had the prosecutor done so, a hearing could have been held to decide whether the prosecutor had been diligent in bringing the case to trial. *Commonwealth v. Hoffman*, 255 Pa.Super. 66, 386 A.2d 138 (1978); *Commonwealth v. Martofel*, 248 Pa.Super. 206, 375 A.2d 60; *Commonwealth v. Martin*, 246 Pa.Super. 407, 371 A.2d 903 (1977). Instead, the court on its own motion extended the 180 day period.

In extending the period the court exceeded its authority; an extension may be granted only on petition. *Commonwealth v. Shelton, supra, Commonwealth v. O'Shea*, 465 Pa. 491, 496, 350 A.2d 872, 874 (1976). Therefore, when the case was called for trial, on March 23, what defense counsel should have done was file a motion to dismiss for denial of a speedy trial. Pa.R.Crim.P. 1100(f). I do not see how he could have lost that motion; if he lost below, he should win later on appeal: the 180 day period had run, with no extension having been properly granted, and with no exclusion being warranted since (as has been stipulated) appellant had not been unavailable. *Commonwealth v. O'Shea, supra* at 498 n. 9, 350 A.2d at 875 n. 9; Pa.R.Crim.P. 1100(d). *See* N.T. 9/28/76 5–6.

Instead of filing a motion to dismiss for denial of a speedy trial, counsel moved to quash the indictment. It was a silly motion, based on the fact that "methamphetamine" was misspelled as "meteamphetamine," and the lower court either should have denied it outright, or should at least have granted the prosecutor's responsive motion to amend the indictment by correcting the spelling. *Commonwealth v. Richey*, 249 Pa.Super. 365, 378 A.2d 338 (1977); *Commonwealth v. Jones*, 250 Pa.Super. 236, 378 A.2d 914 (1977); *Commonwealth v. Walters*, 250 Pa.Super. 392, 378 A.2d 993 (1977). However, the court quashed the indictment.

The prosecutor—as one might have supposed he would—countered by filing a second complaint, on which an information issued. It is the legal effect of this action that is at issue here.

-2-

The lower court appears to have been of the opinion that the filing of the second complaint was an impermissible attempt by the prosecutor to extend (or evade) the 180 day period. *See* lower court slip opinion at 2. In a general way I have some sympathy with this opinion. Thus in other cases I have said that we should compute the 180 day period from the date the first complaint is filed. *Commonwealth v. Braithwaite*, 253 Pa.Super. 447, 385 A.2d 423 (dissenting opinion) (1978); *Commonwealth v. Garbett*, 256 Pa.Super. 478, 390 A.2d 208 (1978). *And see Commonwealth v. Earp*, 476 Pa. 369, 382 A.2d 1215 (1978). However, the reason for thus computing the period is to ensure that the prosecutor will not be able to stall a case, and evade Rule 1100, by withdrawing a prosecution started long ago, and starting another one. *Cf. Commonwealth v. Whitaker*, 467 Pa. 436, 359 A.2d 174 (1976). Here the prosecutor engaged in no such conduct. To the contrary, far from withdrawing the prosecution, the prosecutor tried to preserve it by resisting defense counsel's motion to quash the indictment, asking the court instead to permit an amendment to correct the misspelling. Given this fact, cases such as *Braithwaite* and *Garbett* are no help. Neither is *Commonwealth v. Mumich*, 239 Pa.Super. 209, 361 A.2d 359 (1976), which is the only case cited by the majority, for there the first complaint was defective; here it wasn't.

-3-

In seeking a basis of decision I have found myself thinking a bit about the nature of a lawsuit.

We do not like to acknowledge that sometimes the trial of a lawsuit is a game, played by tricky rules. A trial shouldn't be a game, for a game is a diversion, an activity engaged in

for amusement. Rules appropriate to a diversion are not appropriate to a lawsuit, in which only the cynical or bloodthirsty can find amusement. Realization of this fact has led to many attempts to ensure that a lawsuit is not a game. For example: In a criminal case a late motion will be allowed if "the interests of justice" require. Pa.R.Crim.P. 323(b); *Commonwealth v. Brown* and *Commonwealth v. Will*, 250 Pa.Super. 504, 378 A.2d 1262 (1977). And in a civil case the plaintiff will be given a chance to try to amend his defective complaint. Pa.R.Civ.P. 1033; *A. C. Gregg v. Gacon Construction Co.*, 249 Pa.Super. 377, 378 A.2d 344 (1977). Nevertheless, sometimes a court will find, to its discomfort, that it can only decide a lawsuit as though it were a game; the issues will have been developed in such a way that no other approach is left open to the court. This is most likely to happen when counsel has tried the lawsuit as though it were a game. Instead of using the rules of procedure (and the cases applying them) in the spirit in which they were written—as rules intended to achieve an orderly and just disposition of a dispute—counsel has sought to exploit or manipulate the rules in the hope of achieving a victory that in good conscience his client is not entitled to.

That is what happened here. When counsel filed his motion to quash the indictment, he was playing a game. There was no lack of notice in the indictment; counsel and his client both knew precisely what the charge was. The only basis for the motion was the off chance that the court might wrongly grant it. If, however, one seeks to win by chance, one had better calculate the chances very carefully. Here, counsel didn't; he failed to anticipate, or to realize, that if he won the motion to quash he might lose the ability to pursue the Rule 1100 argument. Here, I believe, as does the majority, that counsel did lose that ability.

To be sure, we might construe the rules very broadly, in counsel's favor, as in effect the lower court did; but I think that would be unfair to the Commonwealth. It would amount to saying that with respect to the motion to quash, counsel could play a game with the rules, exacting of the

Commonwealth strict (meaningless) compliance (a correction of misspelling), but with respect to Rule 1100, counsel would be treated as engaged in the serious enterprise of a lawsuit, and be forgiven strict compliance. Since counsel insisted upon strict compliance in one part of the lawsuit, I should hold him to strict compliance in other parts. Strictly construed, the rules offer no Rule 1100 remedy, for under the rules counsel should have filed a Rule 1100(f) motion to dismiss the first prosecution for denial of a speedy trial, and he did not.

I therefore agree with the majority that the order of the lower court should be reversed, and the second prosecution be remanded for trial.