420 A.2d 385

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Gary Douglas BROCKLEHURST, Appellant.**

Supreme Court of Pennsylvania.

Argued March 7, 1980.

Decided Sept. 22, 1980.

Reargument Denied Nov. 3, 1980.

Charles F. Gilchrest, Routman, Moore, Goldstone & Valentino, Sharon, for appellant.

Samuel J. Orr, Dist. Atty., David B. Douds, Asst. Dist. Atty., Mercer, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## OPINION

KAUFFMAN, Justice.

Appellant, Gary Douglas Brocklehurst, was convicted of burglary after a non–jury trial in Mercer County. After post–verdict motions were argued, appellant was discharged pursuant to Pa.R.Crim.P. 1100 ("Rule 1100"). On appeal, the Superior Court reversed and remanded for sentencing. We granted *allocatur* and now affirm.[1]

On June 22, 1977, the police filed a criminal complaint charging Gary *Paul* Brocklehurst with burglary, theft by unlawful taking, theft by receiving stolen property, and criminal conspiracy.[2] On July 30, 1977, appellant was arrested and the police discovered that the June 22 complaint had named the wrong Gary Brocklehurst. Accordingly, the complaint was corrected immediately in handwriting to state the name, birthdate and social security number of appellant, Gary *Douglas* Brocklehurst. At his preliminary hearing on August 9, 1977, appellant objected to amending the com-

1. Jurisdiction is vested in this Court pursuant to the Judicial Code, Act of July 9, 1976, P.L. 586, No. 142, § 2, 42 Pa.C.S.A. § 724(a). This opinion was reassigned to this writer on June 26, 1980.

2. The complaint also included Gary *Paul* Brocklehurst's birthdate, social security number and address. The record shows that the police had confused Gary *Paul* Brocklehurst with appellant, Gary *Douglas* Brocklehurst, both of whom resided in Mercer county.

plaint on two grounds: (1) that the first complaint was fatally defective because it identified the wrong person as defendant, and (2) the statute of limitations had run on all charges but burglary.[3] The Commonwealth then withdrew the complaint and immediately filed a new one charging Gary *Douglas* Brocklehurst with burglary only. Appellant was re–arrested that same day and a preliminary hearing was held. Trial began on December 27, 1977, within one hundred eighty days of the filing of the second complaint.[4] Although it had refused before trial to dismiss on Rule 1100 grounds, the court, after hearing post–verdict motions, discharged appellant because trial had commenced after the one hundred eighty day run date of the June 22 complaint. The Superior Court properly reversed.

This Court consistently has held that the Rules of Criminal Procedure must be *interpreted as written.*[5] We also have held that Rule 1100 serves two equally important

**3.** Appellant was charged with crimes that occurred sometime between July 29 and August 1, 1975. Thus, appellant argued on August 9, 1977 that no valid complaint had been filed against him within the two year statute of limitations period applicable to prosecutions for theft by unlawful taking, theft by receiving stolen property, and criminal conspiracy. A five year statute of limitations is applicable to the crime of burglary. Act of December 6, 1972, P.L. 1482, No. 334, § 1, 18 Pa.C.S.A. § 108.

**4.** We note that trial also commenced within one hundred eighty days of appellant's initial arrest on July 30, 1977.

**5.** *Commonwealth v. Wade,* 475 Pa. 399, 407, n.8, 380 A.2d 782, 785–86, n.8 (1977) ("We have adhered to the literal language of Rule 1100 . . . ."); *Commonwealth v. Shelton,* 469 Pa. 8, 16, 364 A.2d 694, 698 (1976) (Rule 1100 must be "[l]iterally read."); *Commonwealth v. Jackson,* 464 Pa. 292, 298, 346 A.2d 746, 748 (1975) ("[F]ull compliance" with Rule 323(i) is required); *Commonwealth v. Mitchell,* 464 Pa. 117, 121, 346 A.2d 48, 50 (1975) (" '[W]e expect strict compliance with [the] rules [of criminal procedure]).' "); *Commonwealth v. Mullen,* 460 Pa. 336, 341, 333 A.2d 755, 757 (1975) ("[Rule 141] must be read as written and limitations not included therein should not be read into it."); *Commonwealth v. Kontos,* 442 Pa. 343, 349, 276 A.2d 830, 832 (1971) (Rule 310 to be "strictly interpreted."); *Commonwealth v. Rose,* 437 Pa. 30, 35, 261 A.2d 586, 588 (1970) (Rule 102 was to be applied "literally.") *See also Commonwealth v. Dutton,* 453 Pa. 547, 307 A.2d 238 (1973); *Commonwealth v. Tingle,* 451 Pa. 241, 301 A.2d 701 (1973); *Commonwealth v. Collemacine,* 429 Pa. 24, 239 A.2d 296 (1968).

functions: (1) the protection of the accused's speedy trial rights, and (2) the protection of society. *Commonwealth v. Hamilton*, 449 Pa. 297, 304–05, 297 A.2d 127, (1972).[6] With these concerns in mind, we turn to the instant case.

Rule 1100 requires that "[t]rial in a court case in which a complaint is filed *against the defendant* . . . shall commence no later than one hundred eighty (180) days from the date on which *the complaint* is filed." The *only* complaint filed against the appellant here, Gary Douglas Brocklehurst, was filed on August 9, 1977. Indeed, appellant so argued before trial when he raised the statute of limitations defense and objected to the Commonwealth's efforts to amend the first complaint naming the wrong party. Now, however, appellant argues that the first complaint, although not sufficient to toll the statute of limitations, was sufficient to commence the running of Rule 1100. This analysis comports with neither logic nor public policy and flies in the face of the plain language of Rule 1100. Trial below commenced within one hundred eighty days of the *only* complaint filed against this appellant. Rule 1100 thus was complied with to the letter.

Significantly, appellant does not allege that the Commonwealth filed successive complaints for the purpose of circumventing Rule 1100, nor does the record support such an

**6.** *See Barker v. Wingo*, 407 U.S. 514, 519, 92 S.Ct. 2182, 2186, 33 L.Ed.2d 101 (1972):

In addition to the general concern that all accused persons be treated according to decent and fair procedures, there is a societal interest in providing a speedy trial which exists separate from, and at times in opposition to, the interests of the accused. The inability of courts to provide a prompt trial has contributed to a large backlog of cases in urban courts which, among other things, enables defendants to negotiate more effectively for pleas of guilty to lesser offenses and otherwise manipulate the system. In addition, persons released on bond for lengthy periods awaiting trial have an opportunity to commit other crimes. It must be of little comfort to the residents of Christian County, Kentucky, to know that Barker was at large on bail for over four years while accused of a vicious and brutal murder of which he was ultimately convicted. Moreover, the longer an accused is free awaiting trial, the more tempting becomes his opportunity to jump bail and escape. Finally, delay between arrest and punishment may have a detrimental effect on rehabilitation.

inference. Quite to the contrary, the first complaint was withdrawn only after *appellant* charged that it was fatally defective because it named the *wrong person* as defendant and objected to the Commonwealth's efforts to amend. *Compare Commonwealth v. Whitaker*, 467 Pa. 436, 359 A.2d 174 (1976). (The prosecution may not circumvent Rule 1100 by use of a *nolle prosequi*.) Accordingly, we hold that the running of Rule 1100 commenced with filing of the second complaint on August 9, 1977. *Accord Commonwealth v. Cartagena*, 482 Pa. 6, 393 A.2d 350 (1978) (plurality). Since trial commenced within one hundred eighty days of that date, the Superior Court correctly reversed and remanded for sentencing.

Order affirmed.

EAGEN, C. J., filed a dissenting opinion in which ROBERTS and NIX, JJ., join.

EAGEN, Chief Justice, dissenting.

Aside from my inability to understand how the majority can say only one complaint was filed against Gary *Douglas* Brocklehurst when the trial court found as fact that the complaint filed against Gary *Paul* Brocklehurst was at all times applied to Gary Douglas Brocklehurst and when he was arrested pursuant to the complaint against Gary Paul Brocklehurst before the second complaint ever existed, I am amazed at the majority's apparent ability to first rule this case factually involves only one complaint and then to rely on *Commonwealth v. Cartagena*, 482 Pa. 6, 393 A.2d 350 (1978) (plurality opinion), which must be viewed as a two–complaint case. Either this is a one–complaint case, in which event any attempt to rely on *Commonwealth v. Cartagena*, supra, is inappropriate; or, it is a two–complaint case, in which event the majority fails to recognize that *Commonwealth v. Cartagena*, supra, is not precedent and was impliedly disapproved by a majority of this Court in *Commonwealth v. Johnson*, 487 Pa. 197, 409 A.2d 308 (1979). Moreover, assuming this is a one–complaint case, the majority's approach ignores the fact that Brocklehurst was arrest-

ed prior to the filing of the August 9 complaint and, thereby, ignores a substantial issue which we previously recognized but reserved determination of, namely whether the period between arrest and the filing of a complaint should be included in computing the mandatory period in which to commence trial pursuant to Pa.R.Crim.P. 1100, where the arrest precedes the complaint. See *Commonwealth v. Mitchell,* 472 Pa. 553, 559 n.2, 372 A.2d 826, 829 n.2 (1977).

I can accept in principle the position that a complaint involving a certain criminal transaction can be so defective that the period of time between its filing and dismissal should not be included in computing the mandatory period in which to commence trial under Pa.R.Crim.P. 1100. But that position should be reserved to circumstances where the complaint is so defective that it is totally void and is not applied to the accused who later advances a speedy trial claim. Otherwise, absurd results will occur as in this case. Because the majority fails to recognize that the first complaint was applied to Gary Douglas Brocklehurst and fails to give weight to that fact, it concludes a person arrested on July 30 pursuant to a complaint filed on June 22 is not entitled to have the mandatory period in which to commence trial computed from either of those dates, but must have it computed from August 9, when an amended complaint is filed. This I would suggest is absurd.

. Moreover, even if the application of a defective complaint to an accused is to be ignored, is it fair to Brocklehurst to ignore the fact that he was, at a minimum, arrested on July 30 without a complaint having been filed? Certainly the "disruption of employment, curtailment of associations, subjection to public obliquy, and the creation of anxiety," *Commonwealth v. Mitchell,* supra, 472 Pa. at 561, 372 A.2d at 830, for Brocklehurst, which any speedy trial rule should limit, *Commonwealth v. Hamilton,* 449 Pa. 297, 297 A.2d 127 (1972), began with his arrest on July 30, not with the filing of a new complaint on August 9.

Because factually I view this case as a two–complaint case and because the majority relies on *Commonwealth v. Cart-*

*agena*, supra, a two–complaint case, discussion of the problem of computing the mandatory period in which to commence trial under Pa.R.Crim.P. 1100 where complaints or indictments are dismissed is warranted. The problem has been a recurring one, see e. g. *Commonwealth v. Johnson,* supra; *Commonwealth v. Cartagena*, supra; *Commonwealth v. Earp,* 476 Pa. 369, 382 A.2d 1215 (1978) (plurality opinion); *Commonwealth v. Weitkamp,* 255 Pa.Super. 305, 386 A.2d 1014 (1978); *Commonwealth v. Finfrock,* 257 Pa.Super. 555, 391 A.2d 621 (1978); (plurality opinion); *Commonwealth v. Mumich,* 239 Pa.Super. 209, 361 A.2d 359 (1976); *Commonwealth v. Braithwaite,* 253 Pa.Super. 447, 385 A.2d 423 (1978); *Commonwealth v. Garbett,* 256 Pa.Super. 488, 390 A.2d 208 (1978) (plurality opinion); *Commonwealth v. Lowe,* 255 Pa.Super. 78, 386 A.2d 144 (1978) (equally divided court); *Commonwealth v. Leatherbury,* 269 Pa.Super. 194, 409 A.2d 431 (1979) (panel), but, in resolving it I would reaffirm the view of *Commonwealth v. Johnson,* supra, which the majority today impliedly disapproves by relying on *Commonwealth v. Cartagena,* supra. A brief discussion of the various approaches is needed.

In *Commonwealth v. Whitaker,* supra, this Court held a *nolle prosequi* could not be used to circumvent the mandates of Rule 1100. Accordingly, an order dismissing charges with prejudice was affirmed where the prosecution voluntarily withdrew a bill of indictment two days prior to expiration of the mandatory period.

In *Commonwealth v. Earp,* supra, a plurality took the position that dismissal of certain charges did not toll the running of the mandatory period where Earp remained charged with other crimes arising from the same criminal episode.

In *Commonwealth v. Cartagena,* supra, a plurality took the position that the period should be calculated from the second complaint where the first complaint and all charges contained therein were dismissed for lack of a *prima facie* case. *Commonwealth v. Earp,* supra, was distinguished on

the basis that Earp had remained confined on other charges arising from the same criminal episode.

In *Commonwealth v. Johnson*, supra, this Court ruled that the period between the filing of a viable complaint and the refusal of a grand jury to indict and the period following the indictment by another grand jury and trial should be added together and the total counted in computing the mandatory period, but that the period between the refusal to indict and indictment should not be included. *Commonwealth v. Earp*, supra, was distinguished on the basis that it involved other crimes from the same criminal episode of which Earp was continuously charged and *Commonwealth v. Whitaker*, supra, on the basis that it is limited to an improper attempt to evade the mandates of Rule 1100.

The approaches in *Commonwealth v. Johnson*, supra, and *Commonwealth v. Cartagena*, supra, are inconsistent in that the latter disregarded the time between the first complaint and its dismissal, while the former tacked this period onto the period between the second complaint and trial.

The Superior Court has attempted to consistently follow *Commonwealth v. Mumich*, supra, which, as qualified by consideration of subsequent cases, requires computation from the second complaint if the first complaint is properly dismissed and if the record does not reflect an improper prosecutorial design to circumvent Rule 1100. See, e. g. *Commonwealth v. Braithwaite*, supra. The approach of *Commonwealth v. Johnson*, supra, differed from that of the Superior Court cases in that those cases computed from the second complaint while *Commonwealth v. Johnson*, supra, tacked the periods during which a complaint existed. Hence, in *Commonwealth v. Johnson*, supra, this Court distinguished certain cases from the Superior Court on the basis that the complaints involved ineffective complaints. But, while *Commonwealth v. Finfrock*, supra, was properly distinguished in *Commonwealth v. Johnson*, supra, on that basis, *Commonwealth v. Weitkamp*, supra, was not because

it involved an effective complaint which was dismissed because of the lack of a prima facie case due to an inability to produce a witness and the lack of an objection to the dismissal.

Further comparison is unnecessary because it would only serve to magnify the already obvious problem, in particular, the conflict between *Commonwealth v. Johnson,* supra, and *Commonwealth v. Cartagena,* supra, as well as with the Superior Court's decisions. Whatever the variations may be, the cases have consistently attempted to effectuate the policies behind Rule 1100 which include the placing of limitations on "disruption of employment, curtailment of associations, subjection to public obliquy, and creation of anxiety." [1] *Commonwealth v. Mitchell,* supra, 472 Pa. at 561, 372 A.2d at 830 (1977), citing *Commonwealth v. Hamilton,* supra; and

---

1. While the text sets forth the considerations underlying the accused's right to a speedy trial, I cannot overlook the importance of enforcement of Rule 1100 to society because it advances society's interests as well. Society seeks speedy justice because, when delayed, justice can be lost through the loss of witnesses from death and faded memories and it can be rendered ineffective because of delayed punishment and rehabilitation. These considerations, as well as others, have from the very beginning of the common law been collectively summarized as the efficient administration of justice.

When Rule 1100 was proposed before this Court, I, for one, voiced grave doubts about its ability to serve society's interests by advancing the efficient administration of justice. Nevertheless, because there existed a need to involve our courts more actively in calendar control and, thus, in advancing the efficient administration of justice and because prosecution was often too long delayed, I joined in adopting the rule.

Whatever the problems of construction which may have arisen in interpreting the rule since its adoption, my doubts and those of many others, particularly trial judges, have been resolved favorably. Rule 1100 has served society, the courts, and accused persons well. The efficient administration of justice has been advanced; courts are serving society better; and, guilt and innocence is being more quickly determined. While discharges have occurred, the harm is far less than the benefits which have accrued.

The time may come to amend the rule or to adopt a better one, but a rule is necessary because the constitutional balancing test, applied on a case–by–case basis, of *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), simply cannot serve to advance society's interest as does a prophylactic rule.

see *Commonwealth v. Johnson*, supra. But *Commonwealth v. Cartagena*, supra, the Superior Court cases, and the majority's ruling today which approves *Commonwealth v. Cartagena*, supra, fail in their attempt to effectuate the policy underlying the rule because they fail to acknowledge that during the life of the first complaint an accused is confronted with the factors which the rule should limit.[2] Accordingly, I believe *Commonwealth v. Johnson*, supra, provides the best general approach to effectuate those policies and resolve the conflicts.[3]

In circumstances similar to those presented, the tacking of the period between the filing of the first complaint and its dismissal to the period between the second complaint involving the same criminal transaction and trial recognizes that the circumstances confronting an accused when a complaint is filed against him exist until that complaint is dismissed. Hence, the first period should be included in computing the mandatory period.[4] Not including the period between the dismissal and second complaint which includes charges from the same criminal episode recognizes that the dismissal terminates the circumstances confronting an accused.

2. The majority's position that, absent an attempt by the Commonwealth to circumvent the rule, the period should be computed from the second complaint because of the literal language the rule fails to recognize that the rule does not specifically address itself to resolution of this type of problem and, hence, is literally of no assistance in resolving it.

3. Of course, *Commonwealth v. Johnson*, supra, as precedent and this Court's latest pronouncement, impliedly disapproved rulings inconsistent with it when announced. Yet, the majority ignores this fact and relies on *Commonwealth v. Cartagena*, supra, which was never a precedent and was disapproved by a majority of this Court.

4. As I previously suggested supra, very limited circumstances may arise where the first period should not be included as where the first complaint is so defective in terms of its application to the accused that it actually names a different person *and* is applied to no one or some one other than the accused. My suggested ruling that the periods should be tacked does not extend to such circumstances because, in effect, the first complaint would not under such circumstances have ever brought to bear on the accused the considerations a speedy trial rule should limit.

Of course, if the dismissal occurs because of an attempt by the Commonwealth to circumvent the rule, then as in *Commonwealth v. Whitaker*, supra, the period between the dismissal and second complaint should be included in the computation. Furthermore, the period between dismissal of certain charges and a second complaint should not be excluded from the computation where, as in *Commonwealth v. Earp*, supra, charges from the same criminal episode remain viable.[5] But where the Commonwealth does not seek to circumvent the rule and where all charges are dismissed, mere consent to or agreement to a dismissal of a complaint by the Commonwealth does not in itself, warrant inclusion of the period between dismissal and the second complaint. Rather, the court should examine the causes for dismissal to determine if the dismissal has occurred because of circumstances beyond the Commonwealth's control or if the Commonwealth sought to circumvent the rule. Finally, I recognize that, even where circumstances beyond the Commonwealth's control warrant dismissal, the tacking of the period between the first complaint and dismissal may render compliance with the mandatory period impossible despite due diligence. But I hasten to point out that the Commonwealth may in such circumstances seek an extension pursuant to section (c) of the Rule.

Applying this to the facts instantly, I believe they clearly indicate the mandatory period commenced on June 22, 1977, the date of the first complaint and, because the second complaint was filed the same day that the first was dismissed, the mandatory period should be computed from June 22, 1977. Accordingly, I would hold that trial commenced untimely and that Rule 1100 was violated.

I dissent.

ROBERTS and NIX, JJ., join in this opinion.

5. In this respect, *Commonwealth v. Whitaker*, supra, and *Commonwealth v. Earp*, supra, should be reaffirmed.