450 A.2d 674

**COMMONWEALTH of Pennsylvania**

v.

**Jerry ARDOLINO, Appellant.**

Superior Court of Pennsylvania.

Submitted Feb. 9, 1981.

Filed Sept. 3, 1982.

Donald R. Calaiaro, Pittsburgh, for appellant.

Robert L. Eberhardt, Deputy District Attorney, Pittsburgh, for Commonwealth, appellee.

Before CERCONE, President Judge, and BROSKY and CIRILLO, JJ.

CERCONE, President Judge:

The instant case presents us with a direct appeal from judgments of sentence entered against appellant following his conviction on charges of receiving stolen property and resisting arrest.[1]

On November 1, 1978 two color television sets were unlawfully removed from the premises of the West Liberty Athletic Association in the City of Pittsburgh. A certain Matthew Smith a/k/a Atom Ant was later implicated in the crime. Smith told Pittsburgh police that he had sold the televisions to appellant. On February 23, 1979, with Smith in tow, Pittsburgh police Detectives Wolfe and Parsons, accompanied by uniformed officers of the Mt. Oliver Borough Police Department, proceeded to appellant's Mount Oliver residence to question him about the television sets, and to recover the same. The peace officers approached appellant in his garage and questioned him about the televisions and about his acquaintance with Smith. Appellant denied any knowledge of "Matthew Smith," but when the police pointed to Smith, who had remained seated in their car, appellant acknowledged knowing him as "Atom Ant."

---

1. 18 Pa.C.S. §§ 3925, 5104.

He then volunteered the information that when he purchased the sets from Smith he knew them to have been stolen, and that he subsequently sold them to two other persons. The police immediately read him his *Miranda* rights and placed appellant under arrest. Detectives Wolfe, Parsons and appellant then drove around Allegheny County in an attempt to locate the stolen televisions. An hour and a half after his arrest appellant was taken to the Pittsburgh Public Safety Building where he was once again read his *Miranda* rights. Appellant executed a "rights waiver form" and wrote out his responses to various questions the police put to him. Additionally, a conversation between appellant and the police concerning the crime was tape recorded with appellant's permission. During this conversation appellant again admitted purchasing the televisions from Smith with the knowledge that they were stolen.

On the same day as his initial arrest a complaint was filed against appellant formally charging him with receiving stolen property and conspiracy.[2] Based on this complaint appellant was re-arrested on February 27, 1979. He was held for court on the charges by the local magistrate on March 1, 1979. Upon the motion of the Allegheny County district attorney the motions judge of the criminal division of common pleas court entered an order for *nolle prosequi* as to these charges on April 25, 1979. Neither appellant nor his

---

**2.** The complaint, which was offered into evidence by the Commonwealth at the Rule 1100 hearing on September 25, 1979, read in pertinent part as follows:

That on or about November 1, 1978, in the County of Allegheny, unlawfully did then and there intentionally receive certain and dispose of movable property, of the property to have been stolen and believing that said property had probably been stolen, the said property not having been received, retained and disposed of by the said actor, with intent to restore it to the said owner thereof, That on and about the 1st day of November 1978 and at divers other times within 2 years last past, with intent of promoting or facilitating the commission of the crime of RSP, unlawfully and feloniously did agree with Matthew Joseph Smith that they or one or more of them would engage in conduct which would constitute such crime or crimes, or an attempt or solicitation to commit such crime, and did an overt act in pursuance thereof, to-wit: the actor committed the aforesaid crime,

attorney was notified of the Commonwealth's intention to present the *nolle prosequi* motion, nor did either of them attend the hearing on the motion. The basis for the motion was the district attorney's belief that the February 23 complaint contained a substantive defect which could not be cured pursuant to Rule 150 of the Pennsylvania Rules of Criminal Procedure.

A second complaint alleging the charge of receiving stolen property, but not the conspiracy charge, was filed May 4. Eighteen days later Detectives Wolfe and Parsons, again accompanied by uniformed Mt. Oliver police officers, went to appellant's home to execute the new arrest warrant. Appellant, aided by his brother, resisted this arrest, but the peace officers were able to take him into custody nonetheless. With the approval of the district attorney and the magistrate this second complaint was withdrawn on May 30, 1979. The record before us does not show whether appellant or his counsel agreed to this withdrawal.

On June 1, 1979 a third complaint was filed against appellant. This complaint charged him not only with receiving stolen property but with resisting arrest as well.[3] Appellant was arrested yet again on June 19, and arraigned. A preliminary hearing was held on June 29, 1979 where appellant was held for court on both counts. The district attor-

---

3. The third complaint, part of the record before us, reads in pertinent part as follows:

That on or about October 31, 1978, in the County of Allegheny, unlawfully did then and there intentionally receive certain and dispose of movable property, to-wit: RCA Victor Color Television and an Admiral Color Television a total value of $700.00, of the property of the said West Liberty Athletic Association, then and there knowing said property to have been stolen and believing that said property had probably been stolen, the said property not having been received, retained and disposed of by the said actor, with intent to restore it to the said owner thereof,

That on or about May 22, 1979, in the County of Allegheny, unlawfully did then and there knowingly, wilfully and forcibly obstruct, resist and oppose one Detective Parsons in making the lawful arrest of Jerry Ardolino for the commission of the offense of Receiving Stolen Property on a warrant issued by Magistrate Joseph James City Magistrate to the said Detective Parsons, then and there being a duly appointed and duly acting police officer in and for the City of Pittsburgh, in the County of Allegheny.

ney subsequently issued an information against appellant on both counts. Pre-trial motions to dismiss for violation of Rule 1100 and to suppress appellant's statements to the police were timely filed and heard on the date the case was called to trial, September 25, 1979. The court found that appellant had volunteered his initial confession to the police, that they properly read him his *Miranda* rights, and that he thereafter knowingly and intelligently waived those rights, and thus denied the suppression motion. On the Rule 1100(f) motion to dismiss the court ruled that the Commonwealth had 180 days to bring appellant to trial from the date of the third complaint, that those 180 days had not yet elapsed, and denied the motion. For the reasons hereinafter more fully set out we now vacate the judgment of sentence and discharge appellant on the receiving stolen property charge.

Appellant's first allegation of error, and the one we find dispositive, implicates two rules of criminal procedure: the first—Rule 150—rather lightly litigated, and the second—Rule 1100—considerably more so. *See* Pa.R.Crim.P. 150, 1100.

As noted in the Comment to Rule 1100, the Rule was instituted pursuant to the Pennsylvania Supreme Court's decision in *Commonwealth v. Hamilton,* 449 Pa. 297, 297 A.2d 127 (1972). *See* Pa.R.Crim.P. 1100, Comment. The purpose for its institution was "to more effectively protect the right of criminal defendants to a speedy trial." *Commonwealth v. Hamilton,* supra, 449 Pa. at 308, 297 A.2d at 133. Rule 1100 now requires the Commonwealth to bring an accused to trial within 180 days or risk his discharge with prejudice unless it can show adequate reasons for its failure to do so. *See* Pa.R.Crim.P. 1100(c), (d) & (f).

Rule 150 of the Pennsylvania Rules of Criminal Procedure mandates that unless a defendant waives, either expressly or by failing to object timely, a substantive defect in a complaint, citation, summons or warrant, he shall be discharged, but without prejudice to the Commonwealth's right to file a new complaint. However, if the defect is only "informal" it

may be amended at any time. *See* Pa.R.Crim.P. 150(a) & (b).

Appellant contends that because the initial complaint was withdrawn by the Commonwealth by virtue of its motion for *nolle prosequi,* the time for trial under Rule 1100 continued to run from the date of the filing of the initial complaint. As authority he cites *Commonwealth v. Whitaker,* 467 Pa. 436, 359 A.2d 174 (1976). In the alternative, appellant argues that the dismissal of the first complaint was improper under Rule 150, and therefore the Rule 1100 run-date should have been computed from the first complaint and not from the third. He cites *Commonwealth v. Brennan,* 264 Pa.Superior Ct. 206, 399 A.2d 739 (1979) for this proposition. The Commonwealth counters with the argument that *Whitaker* is not controlling because it is the *basis* for the withdrawal of the complaint by the Commonwealth which must be looked to and not the mere action of withdrawal or motion for *nolle prosequi* itself. It contends, that here there was no clear evidence of a prosecution attempt to skirt Rule 1100 as there was in *Whitaker.* Further, the Commonwealth posits the cases of *Commonwealth v. Mumich,* 239 Pa.Superior Ct. 209, 361 A.2d 359 (1976) and *Commonwealth v. Brocklehurst,* 266 Pa.Superior Ct. 335, 404 A.2d 1317 (1979)[4] as controlling.

This Court held in *Commonwealth v. Mumich,* supra, that the one hundred eighty day period applicable under Rule 1100(a)(2) begins to run anew with the filing of a subsequent complaint after the dismissal of the initial one if, (1) the earlier complaint was properly dismissed, and (2) the record does not reveal evidence of a prosecution attempt to circumvent Rule 1100. See *Commonwealth v. Mumich,* su-

4. *Cf. Commonwealth v. Brocklehurst,* 491 Pa. 151, 420 A.2d 385 (1980). The Supreme Court affirmed this Court's decision although its rationale was slightly different. It reasoned that because the first complaint filed in that case was filed against a person of a different name than the suspect that there was only *one* complaint involved in the case. Thus, it ruled out the analysis developed by Judge Jacobs in *Commonwealth v. Mumich,* supra, and employed by this writer in *Brocklehurst* when the case was before this Court. See *Commonwealth v. Brocklehurst,* 266 Pa.Superior Ct. at 338, 404 A.2d at 1319.

pra. See also *Commonwealth v. Braithwaite,* 253 Pa.Superior Ct. 447, 385 A.2d 423 (1978); *Commonwealth v. Brocklehurst,* 266 Pa.Superior Ct. 335, 404 A.2d 1317 (1979), *aff'd* 491 Pa. 151, 420 A.2d 385 (1980). *But see, Commonwealth v. Brennan,* supra. Since deciding *Mumich,* this Court has consistently applied the two-prong test developed there, and elucidated in *Braithwaite,* 253 Pa.Superior Ct. at 450, 385 A.2d at 424–425.[5] Thus, if the complaint was improperly dismissed or if the record reveals a prosecutorial attempt to deny a defendant his speedy trial rights then the period in which the trial of the defendant must have begun will be calculated from the date of the filing of the first complaint. The Commonwealth must, therefore, be able to demonstrate both the proper dismissal of the initial complaint and its intent to comply with Rule 1100 if it is to have the benefit of computing the run-date from the date of the filing of the subsequent complaint.

Despite the dictum in *Commonwealth v. Brennan,* 264 Pa.Superior Ct. at 209, 399 A.2d at 740, that *Whitaker* stands for the proposition that the entry of an order of *nolle prosequi* upon motion of the prosecution does not toll the running of Rule 1100, no case has so held.[6] The holding of

---

**5.** See *Commonwealth v. Brennan,* 264 Pa.Superior Ct. at 209, 399 A.2d at 740.

And see *Commonwealth v. Genovese,* 493 Pa. 65, 72 n. 15, 425 A.2d 367, 371 n. 15 (1981) (Opinion by Justice Kaufman citing with approval line of Superior Court cases):

See *Commonwealth v. Leatherbury,* 269 Pa.Super. 194, 409 A.2d 431 (1979); *Commonwealth v. Brennan,* 264 Pa.Super. 206, 399 A.2d 739 (1979); *Commonwealth v. Finfrock,* 257 Pa.Super. 555, 391 A.2d 621 (1978); *Commonwealth v. Weitkamp,* 255 Pa.Super. 305, 386 A.2d 1014 (1978); *Commonwealth v. Lowe,* 255 Pa.Super. 78, 386 A.2d 144 (1978); *Commonwealth v. Braithwaite,* 253 Pa.Super. 447, 385 A.2d 423 (1978); *Commonwealth v. Mumich,* 239 Pa.Super. 209, 361 A.2d 359 (1978); *but see, Commonwealth v. Garbett,* 256 Pa.Super. 488, 390 A.2d 208 (1978) (plurality).

**6.** Under the ABA Standards for Speedy Trial, the interpretation of *Commonwealth v. Whitaker* espoused in *Commonwealth v. Brennan,* supra, would maintain. Indeed, under those standards "the critical distinction ... is whether the dismissal was at the instance of the prosecutor or the defendant." ABA Standards for Criminal Justice, Speedy Trial, Standard 12–2.2(b) (1978), Commentary at 12.24. *And*

Whitaker is rather that where the Commonwealth has sought to evade Rule 1100 by moving that a complaint be nolle prossed, the time for trial will be computed from the date of the filing of the first complaint. Moreover, all the cases since *Commonwealth v. Mumich,* supra, have the two-pronged test first utilized there.[7] This is true even of the

see *Commonwealth v. Genovese,* supra, 493 Pa. at 72 n. 16, 425 A.2d at 371 n. 16.

*And see* ABA Standards for Criminal Justice, Speedy Trial, Standard 12–2.3(f) (1978). The comment to that section reads:

This paragraph must be considered as it related to certain other standards. If a case is terminated prior to charging, then, as provided in standard 12–2.2(a), the speedy trial time limitations would commence running only from the date the defendant is subsequently charged or held to answer.

["Charge" in this context refers to a written statement filed in court which accuses a person of an offense and which is sufficient to support a prosecution; it may be an indictment, information, complaint, or affidavit, depending on the circumstances and the law of the particular jurisdiction.] If the case is terminated after charging on motion of the defendant, then, as provided in standard 12–2.2(b), the speedy trial time limitations would likewise commence running only from a subsequent charge or holding to answer. By contrast, the present paragraph provides that dismissal of the charge on motion of the prosecutor only tolls the running of the time until the date the time limitations would commence running as to the subsequent charge had there been no previous charge. If dismissal by the prosecutor were to operate so as to begin the time running anew upon a subsequent charge of the same offense, this "would open a way for the complete evasion" of the speedy trial guarantee.

This tolling provision applies only when the action of the prosecutor amounts to outright dismissal of the charge. If some other step is taken that keeps the charge outstanding and thus keeps the statute of limitations tolled, as with the nolle prosequi with leave procedure found in some jurisdictions, then the speedy trial time limits are not tolled.

The "any other offense required to be joined" language, also used in standard 12–4.1, is necessary to prevent evasion by a subsequent charge of an offense that should have been joined with the first charge. In the absence of legislation to this effect, the courts have allowed a new charge based on the same transaction or occurrence. Rule 722(f)(10) of the Uniform Rules of Criminal Procedure and a NDAA standard are in accord with this standard. *Id.,* Commentary at 12.32–33. (One footnote inserted in text; remainder omitted).

7. Judge Spaeth's Opinion in *Commonwealth v. Garbett,* 256 Pa.Superior Ct. 488, 390 A.2d 208 (1978) purported to follow *Whitaker* rather than *Mumich* and *Braithwaite.* As noted in *Commonwealth v. Bren-*

only other case where there was a withdrawal by the Commonwealth. In that case, *Commonwealth v. Sires,* 284 Pa. Superior Ct. 50, 424 A.2d 1386 (1981), we applied the *Mumich-Braithwaite* test to a situation where the initial complaint was summarily withdrawn by the arresting officer without any impartial judicial review. Based on clear precedent, therefore, we agree with the Commonwealth's contention that the decision of this case should be controlled by the two-pronged *Mumich-Braithwaite* test. We proceed now to our decision on that basis.

Concerning "proper dismissal" we stated the following in *Commonwealth v. Brennan* :

"Proper dismissal" we understand to mean that proceedings on the charges contained in the complaint were dismissed by a competent magisterial or judicial authority who committed no error of law in doing so. See *Commonwealth v. Garbett,* [256 Pa.Super. 488], 390 A.2d 208, 215 (1978) (Price, J., concurring.) This would include, we think, dismissal for failure to make out a prima facie case. *See Braithwaite,* supra; M. Marshall and J. Reiter, *A Trial Court Working with Rule 1100,* 23 Vill.L.Rev. 284, 293 n. 71 and accompanying text. *Braithwaite* indicates that whether the defendant or his counsel object to a dismissal is an important factor in determining whether the dismissal was proper. *See* 253 Pa.Super. at 450, 385 A.2d at 425. See also *Commonwealth v. Mumich,* 239 Pa.Super. 209, 213, 361 A.2d 359, 361 (1976); *Marshall,* supra at 292.

*Id.,* 264 Pa.Superior Ct. at 210, 399 A.2d at 740–741. (Footnote omitted). Instantly, it is contended that the dismissal of the first complaint was improper because it contained no defect, or if it did, then the defect it contained was not substantive and could have been amended at anytime. *See*

nan, 264 Pa.Superior Ct. at 210, n. 4, 399 A.2d at 741, n. 4, *Garbett* does not affect the *Mumich-Braithwaite* analysis. Judge Spaeth's Opinion in *Garbett* was not joined by any of the other judges on the Court: former President Judge Watkins did not participate; President Judge Jacobs and Judge Hoffman concurred in the result; this writer concurred in a separate opinion; and Judge Price concurred in a separate opinion in which Judge Van der Voort joined.

Pa.R.Crim.P. 150(a) & (b). Rule 150 does not delineate the difference between a substantive and an informal defect. The Comment to the Rule does provide some assistance in assessing that difference:

"Informal defect" refers to errors which do not prevent the substantive content of the document from being plainly understood.

Substantive defects would include those cases in which the defendant's identity cannot be determined or in which the offense is not properly described.

Any new complaint must be filed within the time permitted by a statute of limitations.

Pa.R.Crim.P. 150, Comment. Case law has developed the distinction between the two.[8]

 We have seen that the first complaint charged appellant with receiving "movable property . . . of the . . . Liberty Athletic Association" on or about a certain date knowing it to be stolen and without the intention of returning it to its lawful owner. The record indicates that the

---

**8.** In *Commonwealth v. Mumich,* 239 Pa.Superior Ct. 209, 361 A.2d 359 (1976) we ruled that the lack of the complainant's signature on a fornication and bastardy complaint would be construed as a substantive defect because of defendant's failure to object to the dismissal of the complaint by the magistrate at the preliminary arraignment.

But see *Commonwealth v. Leatherbury,* 269 Pa.Superior Ct. 194, 409 A.2d 431 (1979) (Judge Price construed the holding in *Mumich* to mean that this defect could have been amended pursuant to Rule 150(a) but that the defendant's silence on the possibility of amendment would be held against him). *Commonwealth v. Lardo,* 240 Pa.Superior Ct. 107, 368 A.2d 324 (1976) we ruled that the absence of a magistrate's signature and seal was not a substantive defect in a search warrant. In *Commonwealth v. Fitzpatrick,* 481 Pa. 385, 392 A.2d 1346 (1978) the Pennsylvania Supreme Court held that where a charge had been omitted from the complaint such omission was a substantive defect precluding the amendment of the complaint. Likewise, this Court concluded in *Commonwealth v. Jonnet,* 265 Pa.Superior Ct. 315, 401 A.2d 1228 (1979) that writing the wrong Vehicle Code section on a traffic citation was a substantive defect. In the case of *Commonwealth v. Brocklehurst,* 266 Pa.Superior Ct. 335, 404 A.2d 1317 (1979), aff'd 491 Pa. 151, 420 A.2d 385 (1980) it was held that the wrong middle name on a complaint was a substantive error, as it was also held that the incorrect naming of a co-defendant was incapable of amendment in *Commonwealth v. Thomas,* 278 Pa.Superior Ct. 39, 419 A.2d 1344 (1980).

second complaint was identical to the first one, except that the conspiracy charge was dropped. The Commonwealth contends that this description was so inadequate that it rose to the level of a substantive defect in the complaints and could not be cured. Concerning the sufficiency of the description of stolen property in criminal pleadings it has been written that

> . . . when it is necessary to refer to property in an indictment or information, the property should be described therein. It appears that the principal tests applicable for determining the sufficiency of the description of the stolen property in an indictment or information for receiving stolen property are the same as those which apply in determining the sufficiency of the description of the property in an indictment or information for larceny.

Annot., 99 A.L.R.2d 813, 818 (1965). Generally, indictments and informations will be upheld where they describe the stolen property with sufficient clarity for the defendant to prepare his defense to the charge, for a jury to determine whether the property received is the same as that upon which the charge is based, and for the defendant to be able to plead the judgment—once rendered—as a bar of a subsequent prosecution for the same offense. *Id.* Clearly, the first two complaints could not meet these criteria, for they described the property in question no further than to say that it had belonged to the "Liberty Athletic Association" and that it was movable property. However, our analysis does not end with this conclusion, for we must determine whether this defect was substantive or informal.

Although the first and second complaints did not adequately describe the stolen property such that appellant might have pleaded an earlier judgment in bar of the prosecution, they did inform appellant of the date of the alleged crime, the owner of the stolen property, and the nature of the crime with which he was charged. Moreover, the first complaint charged him with conspiring with Smith as well, thus informing him from whom he was alleged to have received stolen property. We have found no Pennsyl-

vania cases on point, but we have uncovered authority in at least two of our sister states which hold that such a defect is amendable. In *State v. Mallory,* 19 Ariz.App. 15, 20, 504 P.2d 556 (1972) the Arizona Court of Appeals held that an information which alleged the crime of receiving stolen property with no more specificity than to set out the elements of the crime as defined in the statute and the date of the alleged offense could be amended by a bill of particulars. In so holding, the Arizona Court of Appeals cited a long line of Arizona cases. Similarly, in *State v. LeJeune,* 352 So.2d 619 (La., 1977), the Louisiana Supreme Court held that an information which described the stolen property received only as "stolen property . . . belonging to Jerome Moore" was sufficient to inform the defendant of the charges against him where a bill of particulars was provided him prior to trial. We see no reason why in this case the first complaint could not have been amended, or why it was necessary to dismiss it, particularly where appellant could have waived the defect by failing to raise it timely himself. As for the second complaint, we believe that it too could have been amended. Furthermore, it was not even an informal defect to have left the resisting arrest charge off the second complaint, since that charge did not arise "from the same incident," see Pa.R.Crim.P. 131(b), but occurred only after the police came to arrest appellant for the third time for the same offense.[9] It was not necessary to include it in a complaint with the receiving stolen property charge. Thus, we conclude that both the first and second complaints were improperly dismissed.

Since the first and second complaints were improperly dismissed the lower court erred when it concluded that Rule 1100 began to run anew with the filing of the third complaint, and it should have counted the one hundred and

9. Pa.R.Crim.P. 131(b) reads:
> When more than one offense is alleged to have been committed by one person *arising from the same incident,* the issuing authority shall accept only one complaint, and shall docket the matter as a single case.
> (Emphasis added.)

eighty days from the date of the filing of the first complaint. Thus, the Commonwealth's failure to bring appellant to trial by August 24, 1979 or to file a petition for extension of time asserting its due diligence if it could not do so, violated appellant's rights to a speedy trial on the receiving stolen property charge under Rule 1100. The lower court erred when it concluded otherwise and we are now constrained to vacate that judgment of sentence and order appellant discharged. There was no error as regards the resisting arrest conviction, however, nor has any been argued. Our order today affects it no way.

Judgment of sentence for receiving stolen property vacated, order reversed and appellant discharged.