465 A.2d 1038

**COMMONWEALTH of Pennsylvania**

v.

**Antoine LEWIS, Appellant.**

Superior Court of Pennsylvania.

Submitted Feb. 2, 1981.

Filed Sept. 9, 1983.

34

Elaine DeMasse, Assistant Public Defender, Philadelphia, for appellant.

Gaele McLaughlin Barthold, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before WICKERSHAM, POPOVICH and WATKINS, JJ.

WICKERSHAM, Judge:

On November 8, 1978, following a non-jury trial before the Honorable Thomas N. Shiomos, appellant, Antoine Lewis, was found guilty of attempted burglary and possessing instruments of crime. Post-verdict motions were denied, and appellant was sentenced to probation for five years on the charge of attempted burglary and a concurrent term of three years of probation on the charge of possessing instruments of crime. Appellant took this appeal.[1]

■ We adopt Judge Shiomos' summary of the facts in this case:

At the trial of the case, Police Officer Thomas Barta testified that on April 11, 1978, at about two-thirty A.M., he received a radio call and that within 30 seconds, he arrived at 67th and Ogontz Avenue and observed a negro male [defendant] walking away from the side entrance of the [Merit] Television Shop located there. At that time, there was no other person in view. The defendant was

---

1. Appellant presents the issues on appeal as follows:
    1. Did not the lower court err by granting the Commonwealth's petition of October 5, 1978 for an extension of the time in which to try appellant under Rule 1100, Pa.R.Crim.P., inasmuch as the Commonwealth failed to demonstrate the exercise of due diligence as required by 1100(c)?
    2. Was not the evidence insufficient to sustain appellant's conviction for attempted burglary and possessing instruments of crime inasmuch as the Commonwealth established nothing more than appellant's mere presence near the scene of an attempted burglary?
  Brief for Appellant at 2.

some five to fifteen feet from the side entrance. Upon exiting his auto, the police officer noticed that there was a claw hammer, two screw drivers and a pair of pliers on the ground. He also noticed that the door knob to the side entrance had been removed. At that point, the police officer stopped the defendant and found on his person a chisel and a flash light. See N.T. pp [5]–9.

Lower ct. op. at 1.

In view of these facts, we find no merit to appellant's contention that the evidence was insufficient to sustain his convictions for attempted burglary and possessing instruments of crime.

█ Appellant seeks to be discharged because his trial was held thirty-one (31) days after the one hundred and eighty (180) calendar day mandate of Pa.R.Crim.P. 1100. We hold that the Commonwealth filed a timely application for extension of time and proved to the satisfaction of the lower court that despite due diligence, the Commonwealth was unable to try the defendant within one hundred and eighty (180) calendar days from the date the complaint was filed.

The relevant procedural history of this case, as set forth in appellant's brief, is, for the most part, uncontested. *See* Brief for Appellant at 3–4. Appellant was arrested and a complaint filed against him on April 11, 1978, resulting in a mechanical rundate, under Rule 1100, of October 8, 1978. At the first trial listing on June 21, 1978, the Commonwealth was unable to proceed to trial because a Commonwealth witness was unavailable. On August 3, 1978, the case was listed in error. The next listing was on August 31, 1978, pursuant to a memorandum from a court trial coordinator. The Commonwealth was then unable to proceed to trial because the arresting officer was on vacation. At the fourth listing, on October 3, 1978, appellant appeared late and the bench warrant which was issued earlier that day was rescinded. The Commonwealth, however, was unprepared to proceed to trial.

On October 5, 1978, the Commonwealth filed a timely petition for an extension of time for the commencement of trial under Rule 1100(c). This petition was subsequently granted, on October 27, 1978, by the Honorable Edward J. Blake who extended the time for the commencement of trial until November 8, 1978. Appellant was tried and convicted on that date.

An extension hearing was held by the lower court at which hearing the Commonwealth relied on the official court records and offered no additional testimony. At the extension hearing, the court reviewed the official court records, and relied on the same in finding due diligence. We have repeatedly upheld such reliance on official court records. *Commonwealth v. Harris,* 315 Pa.Super. 544, 462 A.2d 725 (1983), where we said:

We conclude that, in the instant case, the specific requirements of [*Commonwealth v.*] *Mayfield* [469 Pa. 214, 364 A.2d 1345] have been met. Although it is clear that 'mere assertions of due diligence and unproven facts do not establish cause for an extension under Rule 1100(c),' *Commonwealth v. Ehredt, supra* [485 Pa.] at 195–96, 401 A.2d [358] at 361 [ (1979) ], *quoting Commonwealth v. Antonuccio,* 257 Pa.Super. 535, 536, 390 A.2d 1366, 1367 (1978), we believe that a hearing court may properly take judicial notice of uncontested notations in the court record in deciding both issues, namely, whether the Commonwealth has exercised due diligence in attempting to bring an accused to trial and, whether the requirements necessary to warrant an extension on the basis of judicial delay as defined by *Mayfield* and Rule 1100(c) have been met. We have, of course, previously held that it is proper for a hearing court to accept such records in making a determination of the due diligence of the Commonwealth.

*Commonwealth v. Postell,* 280 Pa.Super. 550, 421 A.2d 1069 (1980); *Commonwealth v. Gibson,* 248 Pa.Super. 348, 375 A.2d 132 (1977); *Commonwealth v. Kollock,* 246 Pa.Super. 16, 369 A.2d 787 (1977). Since the notations on the

record provided convincing evidence of due diligence, there was no need for the Commonwealth to provide further testimony on this issue.

Justice Kauffman, speaking for the supreme court, recently stated that:

> Rule 1100 'serves two equally important functions: (1) the protection of the accused's speedy trial rights, and (2) the protection of society,' *Commonwealth v. Brocklehurst,* 491 Pa. 151, 153–54, 420 A.2d 385, 387 (1980); *Commonwealth v. Hamilton,* 449 Pa. 297, 297 A.2d 127 (1972). In determining whether an accused's right to a speedy trial has been violated, consideration must be given to society's right to effective prosecution of criminal cases, both to restrain those guilty of crime and to deter those contemplating it. *Commonwealth v. Johnson,* 487 Pa. 197 n. 4, 409 A.2d 308 n. 4 (1980). The administrative mandate of Rule 1100 certainly was not designed to insulate the criminally accused from good faith prosecution delayed through no fault of the Commonwealth.
>
> . . . .
>
> So long as there has been no misconduct on the part of the Commonwealth in an effort to evade the fundamental speedy trial rights of an accused, Rule 1100 must be construed in a manner consistent with society's right to punish and deter crime. In considering matters such as that now before us, courts must carefully factor into the ultimate equation not only the prerogatives of the individual accused, but the collective right of the community to vigorous law enforcement as well. Strained and illogical judicial construction adds nothing to our search for justice, but only serves to expand the already bloated arsenal of the unscrupulous criminal determined to manipulate the system.

*Commonwealth v. Genovese,* 493 Pa. 65, 69–70, 72, 425 A.2d 367, 369–70, 371 (1981).

■ We note, however, that Lewis was convicted and sentenced for attempted burglary and possession of instru-

ments of crime. The instruments of crime were burglary tools. Both of these inchoate crimes were designed to culminate in the commission of the offense of burglary. Accordingly, the convictions violate 18 Pa.C.S.A. § 906. We therefore vacate the sentence and underlying conviction of the lesser charge of possessing instruments of crime. *See e.g., Commonwealth v. Ford,* 315 Pa.Super. 281, 461 A.2d 1281 (1983) (collecting cases) and *Commonwealth v. Kinnon,* 308 Pa.Super. 28, 453 A.2d 1051 (1982).

Judgment of sentence for possession of instruments of crime is vacated, judgment of sentence for attempted burglary is affirmed.[2]

POPOVICH, J., files a dissenting opinion.

POPOVICH, Judge, dissenting:

I must dissent from the majority's unwarranted approval of a delay which violates the Rule 1100 run date under the guise of following a rule of law reaffirmed in a recent case.

According to the majority, "there was no need for the Commonwealth to provide further testimony" because "a hearing court may properly take judicial notice of *uncontested notations* in the court record" in deciding (1) whether the prosecution has exercised due diligence in attempting to bring an accused to trial and (2) whether the requirements for an extension based on judicial delay have been established by the prosecution, quoting *Commonwealth v. Harris,* 315 Pa.Super. 544, 462 A.2d 725 (1983).

To begin with, the notations in the record were not uncontested. At the hearing, the following dialogue occurred between defense counsel and the trial court:

"THE COURT: 4–11 with a normal run date of 10–8. [Attorney for Appellant] MS. RAKINIC: I believe on that date, Judge, the complaining witness failed to appear, at least my file so indicates.

2. This decision was deferred pending the filing of *Commonwealth v. Harris,* 315 Pa.Super. 544, 462 A.2d 725 (1983).

THE COURT: It doesn't say it here. Strike that, it says, 'Bench warrant BOSO rescinded, defendant appeared late, Commonwealth not ready.

6–21 to 8–3, Commonwealth witness not present.

8–31 to 10–3, [A]rresting officer on vacation.'

Is there anything prior to that? That's all I have.

MS. RAKINIC: No. I think that the Preliminary Hearing was held at the first listing on 4–21, Judge. 5–5 was just the trial arraignment date. So that there are three continuances at which the Commonwealth was unprepared and that would be 6–21, 8–31 and 10–3.

THE COURT: *And there's one in which your defendant arrived late.*

MS. RAKINIC: *That's the same as the one where the complaining witness was not there at any rate.*

THE COURT: *I'm going to find enough to give them one more opportunity.*

It's now listed for what date?

MS. RAKINIC: 11–8, Room 475.

THE COURT: 11–8 on a must be tried basis." (N.T. 10/27/78, at 2–3) (Emphasis added).

Thus, the record shows that defense counsel contended that there were "three continuances at which the Commonwealth was unprepared." *Id.* Defense counsel further contended that the one day delay which was caused by the appellant's late appearance in court occurred at the same time as the delay where "the complaining witness was not there." *Id.*

The court never responded to this assertion made by defense counsel but instead stated, "I'm going to find enough to give them [the prosecution] one more opportunity." *Id.* The trial court also failed to address the Rule 1100 issue in its opinion. As a result, this factual matter remains unresolved. Additionally, this writer notes that the prosecutor did not contradict the defense counsel's representation since the prosecutor did not utter a single word at the hearing.

This is significant because according to the majority, a trial court need not resolve the factual discrepancies or articulate the facts in support of its ruling to grant a prosecution's petition for extension, as long as there is some evidence in the record that the court has examined the notations in the record at the Rule 1100 hearing. Moreover, although the majority has cited *Commonwealth v. Harris, supra,* that case is inapposite. To begin with, in *Harris,* we said that "a hearing court may properly take judicial notice of *uncontested* notations in the court." 315 Pa.Superior Ct. at 551, 462 A.2d at 729. (Emphasis added). In this writer's mind, the notations were not uncontested. In *Harris,* the record contained "three continuances for which the court was responsible, one defense continuance and *no* Commonwealth continuances." At 550. (Footnote omitted) (Emphasis added). The first continuance was requested by the public defender, the second and third continuances were charged to the court because the wrong defendant was transported from the prison for the trial and because a judge recused himself upon the advice of the district attorney who advised the judge of a previous trial which involved the defendant. *Id.* at 552 and 553. On these facts, this Court held that "the record of the combined hearing reveals that *despite diligent efforts,* the Commonwealth could not bring appellant to trial on August 14, 1979 or August 22, 1979, although it was *ready to proceed to trial* on both of these dates and had been ready to proceed to trial on several listing dates prior to the original run date of August 6, 1979." At 556. (Emphasis added).

In the instant case, unlike *Harris,* the prosecution requested the continuances, except for the one day which was due to the defendant's late appearance in court. Additionally, there was no indication as to "why, despite the unavailability of its witness ... the case could still not be commenced on or before [the run date]." *Commonwealth v. Postell,* 280 Pa.Super. 550, 553–554, 421 A.2d 1069, 1070 (1980).

42

It is obvious that, in the instant case, existing case law fails to support the majority's bootstrap logic. Hence, my dissent.